**In re GGVXX, LTD., a Colorado corporation, Debtor.**

**Bankruptcy No. 90–18286–SBB.**

United States Bankruptcy Court, D. Colorado.

July 25, 1991.

Harry M. Sterling, Gelt, Fleishman & Sterling, P.C., Denver, Colo., for debtor.

Paul G. Hyman, Denver, Colo., J. Lawrence Dunlavey, Phoenix, Ariz., for King Valley Development Corp.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

This matter comes before the Court on Debtor's "Motion to Vacate Order on Motion to Prohibit Use of Cash Collateral and Noncash Collateral, to Require Sequestration of Cash Collateral, to Require an Accounting Regarding Cash Collateral and Noncash Collateral and for Adequate Protection with Respect to Cash Collateral and Noncash Collateral" filed May 24, 1991 ("Debtor's Motion to Vacate Cash Collateral Order" herein), and King Valley Development Corporation's "Response to Debtor's Motion to Vacate Order on Motion to Prohibit Use of Cash Collateral and Noncash Collateral, to Require Sequestration of Cash Collateral, to Require an Accounting Regarding Cash Collateral and Noncash Collateral and for Adequate Protection with Respect to Cash Collateral and Noncash Collateral" filed June 17, 1991 ("Creditor's Response" herein).

Creditor originally sought and obtained, without opposition from Debtor, a Bankruptcy Court order prohibiting Debtor's use of cash collateral, requiring an accounting of all Debtor's revenues, and sequestration of cash collateral. Debtor now requests rescission of that order on the basis that most, if not all, of Debtor's income is derived from golf fees and those fees are not cash collateral; they are not subject to use limitations and sequestration pursuant to 11 U.S.C. § 363(c).

The central question before the Court, and one of first impression, is whether golf fees received by a tenant/debtor constitute cash collateral?[1] If the answer is affirmative, the creditor is entitled to an order prohibiting debtor's use of those fees in the absence of the creditor's approval or Court authorization, all in accordance with 11 U.S.C. § 363. If the answer is negative, Debtor will have access to and use of the fees without the constraints demanded by the creditor and imposed by the Code.[2]

---

1. As set forth in 11 U.S.C. § 363(a),
    (a) In this section, 'cash collateral' means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.
    11 U.S.C. § 363(a).

2. The question before the Court may also be stated as follows: Is a determination that greens fees constitute cash collateral par for the course? Debtor maintains it can drive its business free of the creditor's hook, while the creditor argues its security interest provides a wedge

The Court, having reviewed the file and being advised in the premises, makes the following findings of fact and conclusions of law.

### I. *Factual Background.*

1. Debtor filed a Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code on November 30, 1990.

2. Debtor owns certain real property a portion of which is vacant and a portion of which is developed into and operated as a golf course.[3] Debtor's financial statements disclose that its income is generated primarily from greens fees, cart rentals, range balls, and club rentals.[4]

3. King Valley Development Corporation ("King" or "Creditor") alleges that it is an assignee for value and the present holder of certain first, second, and third priority, perfected secured liens against Debtor's real property and "certain personal property." [5]

4. On January 10, 1991, King filed with this Court a Notice pursuant to Section 546(b) of the Code.

5. King filed a Motion to Prohibit Use of Cash Collateral and Noncash Collateral, to Require Sequestration of Cash Collateral, to Require an Accounting Regarding Cash Collateral and Noncash Collateral, and for Adequate Protection with Respect to Cash Collateral and Noncash Collateral." [6] Debtor filed no response to the motion. The motion was granted.

### II. *Discussion.*

Arizona state law controls the property rights between Debtor and King.

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.... The justifications ... apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property. [Footnote omitted.]
*Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

Section 9–104(j) of the Arizona UCC provides in part that "an interest in or lien on real estate, including a lease or rents thereunder" is excluded from the provisions of Article 9 of the UCC. Ariz.Rev.Stat. § 47–9104(10). Security interests exempted from UCC provisions by this section must be perfected in accordance with Arizona real property laws.

[T]he statutory language of U.C.C. § 9–104(j) [Ariz.Rev.Stat. § 47–9104(10) ] indicates that only the creation or transfer of an interest in realty and the income from that interest in realty are excluded from Article 9.
*In re Kearney Hotel Partners*, 92 B.R. 95, 98 (Bankr.S.D.N.Y.1988).

This Court has neither been advised of nor has it found any reported cases which deal expressly with the characterization of revenues generated by golf courses.[7] One

---

by which it is entitled to a slice of Debtor's revenues.

3. King Valley Development emphasizes that Debtor does not own the land on which the *entire* golf course sits. This fact, however, is not determinative on the issue before the Court.

4. The financial statements also reveal that $500.00 per month is received from "Rent." Debtor alleges that "this is actually receipts derived from the operation of a golf school in connection with the golf course operation." The characterization of this particular income leads this Court to the conclusion that the golf school is operated by an entity which is separate and distinct from Debtor and from which Debtor receives a set monthly fee for the use of the facilities.

5. Attached to King's Motion were one and one-half inches of exhibits consisting of various recorded documents relating to the real property. Contained therein were two "Fixture Filings," designed as exhibits "L3" and "M2." This Court is unable to determine precisely to what other "personal property" King is referring.

6. Creditor maintains its security interest survives and is enforceable pursuant to 11 U.S.C. § 552(b).

7. *See, In re Kearney Hotel Partners*, 92 B.R. 95, 99 (Bankr.S.D.N.Y.1988) (the court finds that room receipts generated by hotel guests are personalty, and states, in dicta, "[t]o hold otherwise would totally distort § 9–104(j) and bring within its keen security interests in income attributa-

analogous area in which the case law is quite clear, however, involves hotel/motel revenues. *See, e.g., In re Ashoka Enterprises, Inc.,* 125 B.R. 845, 846 (Bankr. S.D.Fla.1990) (revenues from hotel/motel room occupancy are personal property or accounts receivable and not "rents"); *In re Shore Haven Motor Inn, Inc.,* 124 B.R. 617, 618 (Bankr.S.D.Fla.1991) (same) (cases cited); *In re Sacramento Mansion, Ltd.,* 117 B.R. 592, 606 (Bankr.D.Colo.1990) (same); *In re Oceanview/Virginia Beach Real Estate Associates,* 116 B.R. 57, 59 (Bankr.E.D.Va.1990) (same); *In re M. Vickers, Ltd.,* 111 B.R. 332, 337 (D.Colo.1990) (same); *In re Investment Hotel Properties, Ltd.,* 109 B.R. 990, 994 (Bankr.D.Colo. 1990) (same); *In re Blue Ridge Motel Associates,* 106 B.R. 81, 82 n. 1 (Bankr.W.D.Pa. 1989) (same); *In re Ashkenazy Enterprises, Inc.,* 94 B.R. 645, 647 (Bankr.C.D.Cal. 1986) (same); *Kearney Hotel Partners, supra* at 99 (same); *In re Greater Atlantic and Pacific Inv. Group, Inc.,* 88 B.R. 356, 359 (Bankr.N.D.Okla.1988) (same). *But see, In re Mid–City Hotel Associates,* 114 B.R. 634, 644 (Bankr.D.Minn.1990) (room receipts are not "rents" but are "income, profits, and issues" consequently, compliance with the UCC is not required to perfect a security interest therein).[8]

The outcome of a clear majority of these cases turns upon the characterization of a hotel/motel guest as a mere licensee rather than a tenant. *See, Sacramento Mansion, supra* at 606 (although certain facts may elevate the status of a normal hotel guest to a tenant); *Mid–City Hotel Associates, supra* at 640 (hotel guest is a mere licensee); *Ashkenazy Enterprises, supra* at 647 ("charges for rooms in hotels are generally referred to as rates, not rents.... A landlord has no lien on his tenant's property for unpaid rent but an innkeeper has a lien for unpaid charges.... Moreover, a tenant receives an estate in land. Whereas, a hotel guest has a *bare right to use.*

The guest is a mere licensee....: The revenues from hotel guests are proceeds of accounts resulting from payments for goods and services.") (emphasis added); *Greater Atlantic and Pacific, supra* at 359 ("guests in a hotel ... are mere licensees and not tenants, and ... they have *only a personal contract and acquire no interest in the realty.*") (emphasis added).

The status of a guest, or licensee, under Arizona law is distinctly different from that of a tenant. A license, under Arizona law, is defined as:

[A]n *authority or permission to do a particular act or series of acts upon the land of another without possessing any interest or estate in such land.* [Citations omitted.] A license is merely a permit or privilege to do what otherwise would be unlawful, while a lease gives the right of possession of the property leased and exclusive use or occupation of it for all purposes not prohibited by its terms.

*Tanner Companies v. Arizona State Land Dept.,* 142 Ariz. 183 [193], 688 P.2d 1075, 1085 (Ariz.App.1984) (emphasis added).

The chief distinction between a tenant and an innkeeper's guest lies in the element of possession. A tenant is deemed to have exclusive legal possession of the demised premises and stands responsible for their care and condition. A guest, on the other hand, has *merely a right to the use of the premises while the innkeeper retains his control over them,* is responsible for the necessary care and attention and retains the right of access for such purpose. Modern law tends to regard as a guest anyone who is a patron of the inn as such, and receives the same treatment as that accorded to short-term guests. *Buck v. Del City Apartments, Inc.,* 431 P.2d 360, 363 (Okla.1967) (emphasis added) (cited with approval by the Arizona

---

ble to other licencees of realty, e.g.: greens fees ·paid for use of golf courses, ...").

**8.** The cases to the contrary "simply did not recognize the economic realities of the cases before them ... a hotelier cannot host without a hotel." *In re Mid–City Hotel Associates,* 114 B.R.

634, 642 and n. 10 (Bankr.D.Minn.1990) (rejected by *In re Nendels–Medford Joint Venture,* 127 B.R. 658 (Bankr.D.Ore.1991) as simply "mudd[ying] the waters"). *See, generally, In re M. Vickers, Ltd.,* 111 B.R. 332, 337 (D.Colo.1990) ("The more practical approach is a bright-line rule.")

courts in a related context in *State v. Carrillo*, 26 Ariz.App. 113, 114, 546 P.2d 838, 839 (1976)).

Case law binding in Arizona has also dealt with other similar situations where business receipts were found to be personal property rather than rents. *See, In re Hillside Associates Ltd. Partnership*, 121 B.R. 23, 25 (9th Cir.BAP 1990) (receipts for the care of nursing home patients are not "rents"); *In re Zeeway Corp.*, 71 B.R. 210, 211 (9th Cir.BAP 1987) (Under Arizona law, gate receipts generated by post-petition automobile races are not included within the scope of a rents, issue, profits or income clause and are, therefore, not cash collateral. *The income is not derived from the rental of real property but rather from the business activity conducted thereon.)*

> We analogize to the income generated by a restaurant or retail store, which although produced in part by the use of the real property upon which business is conducted, the income is not proceeds of the property but the result of the services provided by the business.

*Id.*

Clearly, a temporary right to enter upon real property and partake of the services offered thereon is not the same as an interest in real property. Greens fees, as well as cart rentals, range ball sales, and club rentals are best and most accurately characterized as business receipts or personal property and not rental payments which are directly tied to and wholly dependent upon the use of the real property upon which the business is conducted. King holds a security interest in the real property, the premises, not in the business. *Accord, Greater Atlantic and Pacific, supra* at 359. Golfers, by paying a greens fee, become mere licensees, entitled to the nonexclusive use of the golf course for a short period of time. Further, the greens fees are also compensation for upkeep services on the golf course. Cart rentals, range ball sales, and club rentals are clearly related to the personal property at issue and are too attenuated from the actual real estate to reasonably be considered as directly derived from the use of the land.

The Court concludes that the principal revenues of the Debtor, primarily derived from greens fees and similar use fees, are not rents; they are essentially personal property and do not constitute cash collateral. They are not subject to the use limitations and sequestration pursuant to Section 363(c) of the Code.

The $500.00 per month "rent" from the golf school is, however, another issue. This income *appears to be* a result of Debtor's ownership of the real property rather than its own business efforts. *See, Greater Atlantic and Pacific, supra* at 359 ("If Greater Atlantic had leased its hotel facility to an operator-lessee and received rent from such tenant, [the creditor's] security interest might well attach to such rental payments."). This portion of Debtor's monthly income falls within the exemption of Arizona's UCC § 9–104(j). The Section 546(b) Notice served to perfect King's lien in these monies.

Accordingly, it is

ORDERED that Debtor's Motion to Vacate Cash Collateral Order filed May 24, 1991 is GRANTED IN PART insofar as it deals with receipts other than from the operations of the golf school; and it is DENIED IN PART with respect to the receipts from the operations of the golf school.