**In re Peter H. McCANN, Debtor.**

**Bankruptcy No. 92–10073–WCH.**

United States Bankruptcy Court,
D. Massachusetts.

May 11, 1992.

Donald R. Peck, Nutter, McClennen & Fish, Boston, Mass., for movant.

C. Kathryn Preston, Columbus, Ohio, for Huntington Nat. Bank.

James A. Lightman, Goldstein & Manello, Boston, Mass., for debtor.

Stephen K. Yoder, Bricker & Eckler, Columbus, Ohio, for State Teachers' Retirement Bd.

DECISION ON MOTION FOR SEQUES-
TRATION OF RENTS OR TO PRO-
HIBIT USE OF CASH COLLATERAL

WILLIAM C. HILLMAN, Bankruptcy
Judge.

Debtor[1] is the owner of certain proper-
ties generally known as Steeplechase Gar-
dens, Steeplechase Golf Course, Steeple-
chase Village, and Kingshill Apartments,
all located in the State of Ohio (collectively
"the Properties"). The Huntington Nation-
al Bank ("the Bank") is the holder of cer-
tain assignments of rents granted in con-
nection with its mortgages on the Proper-
ties. It filed the motion before the court
upon alternative theories.

There are no substantive disputes as to
the operative facts, and the court accepts
as its findings the uncontroverted asser-
tions on factual matters contained in the
motion and the responses thereto.

### The nature of the assignments

The Bank first contends that its assign-
ments of rent are absolute; that as a result
the income from the Properties is not prop-
erty of the Debtor's estate; and, that being
the case, the Debtor must sequester and
pay over the income of the Properties to
the Bank. Alternatively, it argues that
should this Court find that the assignments
are merely conditional pledges, the rents
are cash collateral, the use of which should
be prohibited[2] or protected.

■ The properties are located in Ohio
and the law of that state must be consulted
as to the effect of the assignments. *Barn-
hill v. Johnson,* 502 U.S. ——, ——, 112
S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992);
*Butner v. United States,* 440 U.S. 48, 54,
99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979).

If an assignment is in fact absolute, the
assignee/mortgagee would have a right to
rents[3] without any further action on its
part. *Great West Life Assurance Co. v.
Rothman (In re Ventura–Louise Proper-*
*ties),* 490 F.2d 1141, 1145 (9th Cir.1974); *In
re Harvey Road Associates VIII,* 140 B.R.
302 (Bankr.D.Mass.1992).

The operative language of the mortgages
is as follows:

> As part of the consideration for the in-
> debtedness ... [Debtor] hereby absolute-
> ly and unconditionally assigns and trans-
> fers to [Bank] all the rents and revenues
> of the Property.... [Debtor] hereby au-
> thorizes [Bank] ... to collect the afore-
> said rents ... and hereby directs each
> tenant ... to pay such rents to [Bank]
> ...; provided, however, that prior to
> written notice given by [Bank] to [Debt-
> or] of the breach by [Debtor] of any
> covenant or agreement of [Debtor] in
> this Instrument, [Debtor] shall collect
> and receive all rents ... as trustee for
> the benefit of [Bank] and [Debtor] ... it
> being intended by [Debtor] that this as-
> signment of rents constitutes an absolute
> assignment and not an assignment for
> additional security only.

■ While language of absolute transfer
is used, it is immediately followed by provi-
sions which allow the Debtor to control the
revenues until he has received written no-
tice of breach. And, surely, the Bank does
not contend that it has a right to the rents
after payment in full of all secured obli-
gations. At that point, to quote the Ohio
statutory form, "the mortgage shall be
void." Ohio Rev.Code § 5302.14.

The Court agrees with the Bank that
unambiguous contracts are construed ac-
cording to their terms in Ohio as elsewhere.
It further agrees that the quoted language
is unambiguous. However, it concludes
that the assignee's rights are unambig-
uously conditional and not absolute. *In re
Northport Marina Assoc.,* 136 B.R. 911,
916 (Bankr.E.D.N.Y.1992); *Santa Fe Fed.
Savings & Loan Ass'n v. Oak Glen R–Vee
(In re Oak Glen R–Vee, Inc.),* 8 B.R. 213
(Bankr.C.D.Cal.1981). The Bank's reliance

---

1. Peter H. McCann d/b/a The Gentry Company,
Scott Realty Trust, Andy Realty Trust, Post Real-
ty Trust, Taylor Realty Trust, Horrigan Realty
Trust, Victoria Realty Trust, Kingshill Realty
Trust, Steeplechase Realty Trust, Lindsey Realty
Trust, Graceland Realty Trust, J & S Realty
Trust, and Connie Realty Trust.

2. The Bank has previously served notice under
§ 546(b).

3. The issue of the nature of the various income
streams of the Properties will be considered
subsequently.

upon *In re Thymewood Apartments, Ltd,* 123 B.R. 969 (S.D.Ohio 1991), is misplaced as that case construes Florida law and a Florida statute.

Given, then, a conditional assignment of rents, it is necessary to consider whether the rents are cash collateral.

Pursuant to 11 U.S.C. § 363(a), cash collateral is

[C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

Section 552(b) provides in part:

... if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to the property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law ...

### Enforcement of the assignments

All parties cite cases from many jurisdictions, but, given the great variety of state statutes and common law, the Court concludes that Ohio precedents should be considered to the maximum possible extent.

The courts of Ohio treat the rights created by a conditional assignment of rents as requiring an additional step for enforcement. "A mortgagee of real property is entitled to the rents and profits of the mortgaged premises when he takes actual possession of the property, when possession is taken on his behalf by a receiver, or when he demands such possession." *Perin v. N–Ren Corp.,* 1988 WL 56669, * 3, 1988

Ohio App. Lexis 2089, *9 (1988) and cases cited. The federal courts in Ohio have recognized this principle as the starting point. *First Federal Savings & Loan Ass'n v. Hunter (In re Sam A. Tisci, Inc.),* 133 B.R. 857 (N.D.Ohio 1991); *In re Pfleiderer,* 123 B.R. 768 (Bankr.N.D.Ohio 1987).

In the present case, the Bank did not obtain actual possession of the properties. It did, however, file an action in the state court on December 30, 1991, seeking to foreclose its mortgages and to enforce its rent assignments. That action has been stayed as a result of the filing of the petition herein on January 6, 1991.

■ The next question to be addressed is whether the commencement of the state court action constituted an adequate demand for possession as required by Ohio law.

*Hutchinson v. Straub,* 64 Ohio St. 413, 60 N.E. 602 (1901), provides guidance. In that case the issue was whether an assignee for the benefit of creditors who collected rents did so for the benefit of the holder of an antecedent assignment of rents or for the benefit of the creditor body in general. The Ohio Supreme Court held that the rent assignment prevailed:

True it is that, ordinarily, the mortgagor has the right to receive as his own the rents of the real estate so long as he remains in possession. But the mortgagor in this case yielded possession to one who took the property burdened with the duty to administer it for the benefit of creditors, and then the question ceased to be one between the mortgagor and the mortgagee exclusively, and became a question between creditors themselves. ... Manifestly, in equity, the mortgagee had the right, by virtue of the stipulations in the mortgage, to sequester the rents, and the only question remaining is as to the manner of enforcing such right. Ordinarily, the method would be by the appointment of a receiver auxiliary to a foreclosure suit. But why should that be held to be the only way? That holding would make it impossible for the mortgagee to avail himself of his right; for, the estate having passed into the exclu-

sive jurisdiction of the probate court [by virtue of the assignment], no other court could interfere with the probate court's control of the property, and the effect would be to put it in the power of a debtor to defeat, by assignment of his property, the enforcement of a just and legal lien upon it. That a debtor possesses no such right is elementary.

64 Ohio St. at 416, 60 N.E. at 603.

To the same effect is *In re Cordesman–Rechtin Co.*, 66 Ohio App. 25, 19 O.O. 287, 31 N.E.2d 472 (1940), which involved the appointment of a receiver to liquidate a corporation and the status of rents collected during the statutory receivership between the receiver and the assignee of the rents.

Although it may have been applying federal common law,[4] *Curtis v. Amsler (In re Wakey)*,. 50 F.2d 869 (7th Cir.1931), is consistent with this result in the bankruptcy context, and it has been followed post-*Butner*. *In re Pfleiderer, supra.*

The Court concludes that the pre-petition state court action was all that was necessary to perfect whatever rights the Bank might have in the income of the Properties. To the extent that the income is within the § 363(a) definition, it is cash collateral.[5] *See In re Miller*, 133 B.R. 882 (Bankr. N.D.Ohio 1991); *Central Trust Co. v. Mr. D. Realty Co. (In re Mr. D. Realty Co.)*, 26 B.R. 96, 98 (Bankr.S.D.Ohio 1982).[6]

Having determined that cash collateral exists, it is necessary to respond to further arguments raised by Debtor, *to wit:*

1. Is Bank only entitled to net rents under its documents?

2. Are the revenues of the Steeplechase Golf Course "rents" and hence cash collateral under § 363(a)?

3. Does the Bank have a claim to rents from properties where its rights are subject to a prior mortgage and assignment of rents?

**4.** *See Butner v. United States, supra,* n. 5.

**5.** Since the action which constituted the Bank's demand was pre-petition, it is not necessary for us to address the nice issues about the possibility of a demand being made after filing. *See In*

*The "net rent" issue*

The following language is found in the Bank's first mortgages covering Steeplechase Gardens and Steeplechase Golf Course:

> All rents and revenues collected subsequent to delivery of written notice by [Bank] to [Debtor] of the breach by [Debtor] of any covenant ... shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the rents, including, but not limited to, attorney's fees, ... costs of repairs to the Property, premiums on insurance policies, taxes, assessments and other charges on the Property ... and then to the sums secured by this Instrument.

Debtor argues that if the Bank were found to be entitled to rents, "it would only be entitled to net rents, since the Mortgage expressly requires that these funds first be applied to the expenses of operating and managing the Properties."

The Court agrees with Debtor's conclusion, but need not decide the precise point raised. Even if it is the gross rents to which the Bank is entitled as cash collateral, it would not be given control of the funds in excess of the Properties' net cash flow for the reasons described by Chief Judge Queenan in *Prichard Plaza, supra* n. 5, at 929: "To the extent that the debtor applies rental income to the operations and maintenance of the property ... the mortgagee may be considered to be adequately protected." 84 B.R. at 301.

Someone will have to maintain the Properties. Unless the Bank can demonstrate that Debtor is exercising other than sound business judgment in so doing, Debtor will be permitted to retain the funds to accomplish that end.

To insure that the Bank can intelligently evaluate the current operations, the order to be entered will require Debtor to allow

*re Prichard Plaza Assoc. L.P.,* 84 B.R. 289, 300 (Bankr.D.Mass.1988).

**6.** This conclusion moots consideration of Bank's claims under its junior mortgages covering these parcels.

the Bank reasonable access to such financial and other records as it may require to make its determination. If the Bank feels that the facts demonstrate unsound practices, it will be permitted to apply to the Court for further relief.

In particular, the Court rules that any management fees paid to Debtor or any affiliated person or entity will be subject to immediate challenge by the Bank if they exceed the charges which would be made for the same services by an equally qualified disinterested property manager.

Further, as Chief Judge Queenan emphasized, "if the rental income is declining, then the mortgagee's interest in rents may be prejudiced even if that income is being properly applied." *Id.* at 302. There is no such evidence before the Court and, in any event, that issue might best be raised in a motion for relief from stay, as both the value of the underlying real estate and the income stream must be considered in determining the overall issue of adequate protection. *Id.* at 301.

Until further order of the Court, the net rents from Steeplechase Gardens shall be maintained in a separate account and not commingled with other property of the Debtor.

### The golf course revenues

■ Debtor contends, and the Bank does not dispute, that the income of Steeplechase Golf Course, a public course, consists of greens fees, restaurant and bar revenues, and sales of goods and services by the pro shop. From this it argues that the income stream is not rents and hence is not subject to the interest of the Bank.

As to the first half of this argument, the Court agrees, and adopts the conclusion of Judge Brooks that

Greens fees, as well as cart rentals, range ball sales, and club rentals are best and most accurately characterized as business receipts or personal property and not rental payments. . . .

*In re GGVXX, Ltd,* 130 B.R. 322, 326 (Bankr.D.Colo.1991).

The other types of income present in this case and not mentioned in the quoted language are also manifestly not rental income. All of the elements of income of the golf course are sums received for the sale of goods or provision of services. They are, as noted, personal property.

If the Bank is to have an interest in those items it must establish it under the Uniform Commercial Code ("UCC"). The Bank contends that it has done so, relying upon its mortgage and filed financing statements.

■ The mortgage is titled "Open-end Mortgage, Assignment of Rents and Security Agreement." Notwithstanding its title, the mortgage will constitute a security agreement only if it satisfies the UCC's Statute of Frauds. There must be an agreement in writing signed by the debtor containing a description of the collateral. Ohio Rev.Code § 1309.14.

Paragraph 15 of the mortgages [7] satisfies the most stringent possible views as to the necessity for "granting language" in a security agreement.[8] It remains only to see if the language of the mortgage will cover the nature of the income stream of the golf course.

Relevant text can be extracted as follows:

... [Debtor] does hereby mortgage, grant, convey and assign to [Bank] the following described property:

[real estate description]

TOGETHER with ... all easements, rights, appurtenances, rents, royalties ... and all fixtures, machinery, equip-

---

7. "15. UNIFORM COMMERCIAL CODE SECURITY AGREEMENT. In addition to being an Open–End Mortgage and Assignment of Rents, this Instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and

[Debtor] hereby grants [Bank] a security interest in the Property."

8. *See* 1 G. Gilmore, *Security Interests in Personal Property* § 11.4, at 347–48; *Continental Can Co. v. Owensboro Canning Co. (In re Owensboro Canning Co.),* 82 B.R. 450 (W.D.Ky.1988) and cases cited.

ment ... appliances and goods of every nature whatsoever ...; and all other property now owned or hereafter acquired and used in or about the above-described premises; all of which ... being hereinafter referred to as the "Property".

■ The quoted definition of "Property" includes the phrase "all other property now owned for hereafter acquired and used in or about the above-described premises." The phrase in the abstract appears to fall within the "all property" language which this Court recently held to be an adequate description of collateral for UCC purposes. *In re Legal Data Systems, Inc.*, 135 B.R. 199, 201 (Bankr.D.Mass.1991). However, the context of that case was a collateral description dealing exclusively with items of personal property. In the present case, the quoted phrase is found as part of a "together with" catch-all following a real estate description. The same reasoning that declares the golf course collateral to be non-rent mitigates against extending *Legal Data* to the facts of this case.

The Court finds that the greens fees, etc., are not cash collateral.

### The "subject to" assignments of rents

The State Teachers' Retirement Board of Ohio ("STRBO") holds first mortgages on the Steeplechase Village and Kingshill Apartments properties. The Bank holds second mortgages on those parcels.

The Steeplechase Village first mortgage contains an assignment of rents:

4. That all rents, profits and income from the property covered by this mortgage are hereby assigned to the Mortgagee for the purpose of discharging the debt hereby secured. Permission is hereby given to Mortgagor so long as no default exists hereunder, to collect such rents, profits and income for use in accordance with the provisions of the Regulatory Agreement.[9]
5. That upon default hereunder Mortgagee shall be entitled to the appointment of a receiver by any court having

jurisdiction, without notice, to take possession and protect the property described herein and operate same and collect the rents, profits and income therefrom;

Both the mortgage and regulatory agreement prohibit further encumbrances or alienation of interests in the property:

17. That [Mortgagor] will not voluntarily create or permit to be created against the property subject to this mortgage any lien or liens inferior to superior to the lien of this mortgage.... (mortgage)
6. Owners shall not without the prior written approval of the Secretary [of HUD]:
   (a) Convey, transfer, or encumber any of the mortgaged property, or permit the conveyance, transfer or encumbrance of such property.
   (b) Assign, transfer, dispose of, or encumber any personal property of the project, including rents.... (regulatory agreement)

The Kingshill Apartment first mortgage to STRBO and its related regulatory agreement contain the same provisions, and the following discussion will apply to both properties.

The Bank's junior mortgages also contain assignment of rent language similar in substance to that previously discussed.

STRBO contends strenuously that it holds absolute, unconditional assignments of rents which have been properly perfected by the filing of the relevant instruments in the public record. However, just one page after the last mention of this assertion in its response to the Bank's motion, it makes the legal argument that "Ohio law does not authorize absolute assignment of rents." Taking this last assertion as prevailing over those which preceded it, the Court will accept as admitted that STRBO holds only a conditional assignment of rents.[10]

The next STRBO argument to be addressed is that the Bank has no interest in

---

9. Review of the regulatory agreement indicates no provisions regarding use of the rents which are relevant here.

10. This would most probably have been the Court's conclusion unaided by the admission.

the two properties under discussion because the grant of an interest to the Bank was a violation of both the mortgages and regulatory agreement. This claims too much.

A party to a contract can, in law, breach it, and create rights in others which are valid, notwithstanding that those rights owe their existence to the breach. Examples could be drawn from virtually any area of contract law. However, STRBO must prevail on this point for other reasons.

The assignments of rent and restraints on alienation contained in the mortgages and regulatory agreements in favor of STRBO were matters of public record at the time the Bank acquired its interest in these two properties. The Bank took its interest with record notice of the prior assignments and restrictions. *See* cases cited in the annotations to Ohio Rev.Code Ann. § 5301.25. Indeed, Bank's second mortgages recite that:

> Mortgagor covenants that Mortgagor has a good and marketable title in fee simple to the Premises and that the same are free and clear from all encumbrances whatsoever except taxes and assessments payable hereafter *and prior liens of record....* (emphasis added)

The Bank's rights are subject to the superior rights of STRBO in the rents, and their motion must be denied as to these two properties. In so doing, the Court may be doing the Bank a favor. Ohio recognizes the tort of intentional interference with the performance of a contract. *See, e.g., Seal v. A.B. & S. Co.,* 1990 WL 67933, 1990 Ohio App.Lexis 1952. If rights in the rents to these properties superior to STRBO were granted to the Bank, the Bank might well be liable to STRBO for any damages caused. *See First Wyoming Bank v. Mudge,* 748 P.2d 713 (Wyo.1988).

An order will enter in accordance with this decision.