**In re GENERAL ASSOCIATED INVESTORS LIMITED PARTNERSHIP, an Arizona limited partnership, Debtor.**

**Bankruptcy No. B–92–14225–PHX–RGM.**

United States Bankruptcy Court,
D. Arizona.

Feb. 25, 1993.

Thomas J. Salerno, Robert J. Miller, Streich Lang, Phoenix, AZ, for debtor.

Peter J. Rathwell, Snell & Wilmer, Phoenix, AZ, for Registry Hotel Corp.

Susan G. Wintermute, Bryan Cave, Phoenix, AZ, for Deerport Scottsdale Inv., Inc.

Jean K. FitzSimon, Johnston, Maynard, Grant and Parker, Phoenix, AZ, for Unsecured Creditors' Committee.

Adrianne Kalyna, United States Trustee, Phoenix, AZ.

## OPINION AND ORDER GRANTING DEBTOR'S MOTION REGARDING USE OF INCOME FROM DEBTOR'S BUSINESS OPERATIONS

ROBERT G. MOOREMAN, Chief Judge.

This matter is before the Court pursuant to Debtor's Emergency Motion for Interim Order Regarding Use of Income from Debtor's Business Operations filed on November 30, 1992. After due consideration of the motion, the applicable law, the record herein, the January 8, 1993 transcript of the hearing before the Honorable Sarah Sharer Curley ("Judge Curley"), the pleadings filed by Debtor, Deerport Scottsdale Investments, Inc. ("Deerport"), Registry Hotel Corporation ("RHC"), and the Unsecured Creditor's Committee and under the present posture of the case, the Court finds and concludes as follows.

Initially, a hearing was held concerning the dispute on December 4, 1992 and several hearings followed. Subsequently, Judge Curley entered an order of recusal. This Court held a hearing on January 15, 1993 regarding the status of the matter and the Court ordered granting the parties 10 days to file additional briefs after which the matter would be deemed under advisement. The following pleadings were timely filed: Deerport's supplemental response on the issue of cash collateral and Debtor's reply to Deerport's supplemental response on the issue of cash collateral.

Based upon the record before the Court, the Court finds and concludes that the following material facts are uncontested.[1]

1. Debtor, an Arizona limited partnership, filed a voluntary petition under Chapter 11 on November 30, 1992.

2. Debtor owns the Registry Resort ("Resort") which is located on approximately 43 acres of land in Scottsdale, Arizona.

3. RHC operates the Resort under a management contract.

4. Debtor's income is derived from three sources:

A. Revenues generated from guest room sales ("Room Revenue");

B. Revenues generated from the facility such as food, banquet rooms, and miscellaneous operations ("Facility Revenue");

C. Revenues generated from Debtor's capacity as a landlord where Debtor leases various shops which includes a travel agency, car rental company, and a hair salon. ("Lease Revenue").

---

1. Judge Curley gave Deerport until January 15th, 1993 to update Debtor's Statement of Facts. January 8, 1993 Transcript, pages 43–44. The record indicates Deerport did not provide such an update, thus, it appears that Deerport does not contest Debtor's Statement of Facts dated December 30, 1992. Additionally, the Court notes that Debtor filed the Statement of Facts with a reservation to contest the amount owed and the validity of such liens at a later date.

5. The following is a computation of the revenue allocation for 1991 and from January through April of 1992:

A. Room Revenue—50%

B. Facility Revenue—49%

C. Lease Revenue—1%

6. In October 1992, Deerport purchased promissory notes ("Notes") from the RTC which evidence Debtor's indebtedness owed to Deerport.[2] Deerport purchased the Notes from the RTC for approximately $16,000,000. Currently, Deerport asserts a claim in excess of $66,000,000.

7. Deerport asserts a lien in the Resort property as evidenced by certain Deeds of Trust and Assignment of Leases and Rents.[3]

8. The Deed of Trust grants Deerport a lien in the Resort as follows:

A. Real property and improvements thereon;

B. Rents, issues and profits;

C. Equipment;

D. Insurance proceeds;

E. Eminent domain awards.[4]

9. The Deed of Trust grants Deerport a personal property lien on the following and the proceeds therefrom:

A. Equipment;

B. Insurance proceeds;

C. Eminent domain awards.

10. The Assignment of Leases and Rents assigns certain property interests of the Debtor as landlord at the Resort where the Resort leases space to various tenants.

11. A UCC–1 financing statement was filed with the Secretary of State and provides that the UCC–1 is being filed in connection with the 2nd Deed of Trust. Additionally, the UCC–1 specifically asserted a security interest in the following:

A. All items of personal property of the Debtor attached to, located on, or used in connection with the Resort's Real Property;

B. Equipment;

C. Insurance proceeds;

D. Eminent domain awards.

12. The parties agree that Arizona state law controls the interpretation of the documents.

After an analysis of the above documents, the Court finds and concludes on this record that this dispute involves three primary issues [5]:

1) Whether the instruments provide Deerport a perfected security interest in Room Revenue and the Facility Revenue under Arizona law.[6]

2) Whether the Room Revenue and Facility Revenue should be considered a rent, profit or proceed resulting in the continuation of Deerport's pre-petition security interest pursuant to 11 U.S.C. § 552, assuming Deerport has a valid security interest.

3) Whether the Bankruptcy Appellate Panel's interpretation of 11 U.S.C. § 552 in the case of *In re Northview Properties,* 130 B.R. 543 (Central District of California)

---

**2.** Deerport purchased promissory notes known as the following:

a. The Registry—2 Permanent Loan Note and Roll–Up Note dated June 5, 1985 principal amount of $47,500,000.

b. Roll–Up Loan Note dated June 5, 1985 principal amount of $2,000,000.

c. The Promissory Note dated March 31, 1989 principal amount of $3,500,000.

d. Permanent Loan Agreement and Roll–Up Loan Agreement and a Loan Modification Agreement.

**3.** The documents are known as the following:

a. Deed of Trust and Security Agreement dated June 5, 1985 and a 2nd Deed of Trust and Security Agreement dated March 31, 1989 ("collectively known as Deed of Trust").

b. Assignment of Leases and Rents dated June 5, 1985 and a 2nd Assignment of Leases and Rents dated March 31, 1989 ("Assignment of Leases and Rents").

**4.** The Deed of Trust grants Deerport certain property interests in Debtor regarding Debtor's status as a landlord of the various shops.

**5.** Deerport contends that the intent of the parties is an issue regarding the security interest. However, the Court finds and concludes that intent is not an issue in the dispute and further notes that Debtor and Deerport were not the original parties to the documents. Thus, the intent of the parties is irrelevant and does not govern in the dispute.

**6.** Debtor does not dispute that Deerport has a continuing security interest in the Lease Revenue from a travel agency, a car rental company and a hair salon.

(Bankr. 9th Cir.1991) (BAP) is the controlling authority on the Bankruptcy Court in the District Court of Arizona on the issues raised herein.

■ First, the Court will analyze the issue of Room Revenue. Revenue generated from a hotel guest paying for a hotel room is considered personal property. *State v. Carrillo*, 26 Ariz.App. 113, 546 P.2d 838 (Ct.App.1976). The Arizona Court in *Carrillo* ruled that a hotel guest is a mere licensee with the right to use the premises rather than a tenant who has the right to possess the real property. *Id.* Thus, a hotel guest's interest in a hotel is more akin to a personal property interest rather than that of a real property interest. Similarly, a Colorado Bankruptcy Court interpreting Arizona law concluded, in dicta, that a hotel guest had a personal property interest in the hotel. *In re GGVXX*, 130 B.R. 322 (Bankr.D.Colo.1991). The Bankruptcy Court in Colorado, Bankruptcy Judge Sidney Brooks, held that greens fees on a golf course in Arizona constitute personal property. *Id.* In reaching its conclusion, the Court in *GGVXX* relied on the distinction between a hotel guest and a tenant. Using this analysis, the Colorado Bankruptcy Court found that a hotel guest does not have a real property interest but only has a personal property interest; therefore, it follows that the revenue derived from a hotel guest must be a personal property interest rather than a real property interest. Moreover, it appears that the majority of the Bankruptcy Courts dealing with the issue of hotel revenue property hold that revenue generated from a hotel is a personal property interest more appropriately characterized as an account rather than rent. *See In re Northview Corp.*, 130 B.R. 543 (Bankr. 9th Cir.1991).

■ As a rule, a party that holds a security interest in personal property must comply with Article 9 of the UCC regarding the security interest's attachment and perfection. A.R.S. § 47–9102 provides that Article 9 applies to security agreements regarding personal property.[7] Article 9 allows a party to obtain a security interest in personal property by entering into a security agreement. A.R.S. § 47–9203. The security agreement must reasonably identify the subject collateral of the security agreement. A.R.S. § 47–9110. The Deed of Trust at issue here provides for a personal property security interest in the equipment, the insurance proceeds, the eminent domain awards and all proceeds therefrom. The Assignment of Leases and Rents grants a lien on the real property interests of the Resort but does not expressly grant any personal property interest in the Resort. The Financing Statement before the Court does not refer specifically to any accounts or personal property intangibles which could be construed to be considered Room Revenue or Facility Revenue.

Deerport has the burden of proof under 11 U.S.C. § 363(*o*) regarding the issue of its claimed security interest in the Room Revenue and Facility Revenue. Deerport contends that the Deed of Trust and the Assignment of Leases and Rents gave Deerport a *blanket lien* on the Resort's assets including the Room Revenue and Facility Revenue. After reviewing the Deed of Trust, the Assignment of Leases and Rents, and the Financing Statement, the Court finds and concludes that the documents before the Court do not constitute a *blanket lien* thereon nor do they provide for any security interest in the hotel accounts. Therefore, all matters being duly considered, the Court finds and concludes that Deerport does not have a security interest in the Room Revenue or the Facility Revenue on this record.

■ The Court further notes of record herein that even in the event that Deerport were to have a valid perfected security interest in the Room Revenue and the Facility Revenue, then Deerport would still be required to prove that its security interest is in the form of a rent, profit or proceed in

---

**7.** Rents from real property are excluded from the rules in Article 9 pursuant to A.R.S. § 47–9104. However, as stated, room revenue from a hotel is not considered a rent from real property but is considered a personal property interest. Thus, parties with a security interest in hotel room revenue are subject to the provisions of Article 9.

order for the security interest to continue to be effective after the filing of the bankruptcy petition. The law applicable in Bankruptcy is that property acquired post-petition is not subject to any lien resulting from a security agreement entered into pre-petition and that a lien remains effective only if the after acquired property is a rent, profit or proceed.[8]

Deerport contends that Room Revenue should be considered rents rather than accounts citing *Everett Home Town Limited Partnership*, 146 B.R. 453, 457–58 (Bankr. D.Ariz.1992) and *In re S.F. Drake, Hotel Associates*, 147 B.R. 538 (N.D.Cal.1992). Additionally, Deerport contends that the Facility Revenue is a real property interest and properly perfected under real property laws. *Great–West Life Assurance Company v. Raintree Inn*, 837 P.2d 267 (Colo. App.1992).

On the issue of controlling law, Deerport contends that the Ninth Circuit Court of Appeals has not decided whether a Bankruptcy Appellate Panel ("BAP") decision is a controlling authority in the entire circuit, *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir.1990), and that therefore the Bankruptcy Appellate Panel decision in *Northview* decided in the Central District of California is not controlling authority in Arizona.

Debtor's position with regard to the bankruptcy law issues is that BAP decisions are controlling authority and this Court is required to follow all BAP decisions even in the event that the BAP decision arises from another District.[9] Additionally, Debtor urges that under *In re Northview*, 130 B.R. 543 (Bankr. 9th Cir. 1991) (BAP) the Rent Revenue is considered a personal property interest defined as an account and not considered a real property interest such as a rent. Debtor also cites *In re Zeeway Corp.*, 71 B.R. 210 (Bankr. 9th Cir.1987), for authority that the Facility Revenue is not rents, profits, or proceeds because such revenue is derived from the Resort's services rather than the real property. Under this reasoning, Deerport's claimed lien in the Room Revenue and Facility Revenue would not continue after the filing of a bankruptcy petition.

Considering all of the foregoing, this Court finds and concludes on this record that BAP authority is controlling in all cases when the facts and law are applicable. Deerport concedes that the BAP has held that BAP decisions are controlling authority within the Ninth Circuit. *In re Windmill Farms, Inc.*, 70 B.R. 618, 622 (Bankr. 9th Cir.1987) rev'd on other grounds 841 F.2d 1467 (9th Cir.1988); *In re Proudfoot*, 144 B.R. 876 (Bankr. 9th Cir. 1992). However, Deerport argues that the BAP decisions should not be considered controlling until a Ninth Circuit Court of Appeals Circuit Court decision directly rules that a BAP decision is controlling within the Circuit regardless of the District from which the ruling emanates. The Court in *Windmill Farms, Inc., In re Proudfoot* and *In re Globe Illumination Co.*, 149 B.R. 614 (Bankr.C.D.Cal., 1993)[10],

---

**8.** 11 U.S.C. § 552 provides the following: (a) Except as provided in subsection (b) of this Section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case. (b) Except as provided in Sections 363, 506(c), 522, 544, 545, 547, and 548 of this Title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security agreement created by such security agreement extends to property of the debtor acquired before the commencement of the case and to *proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired* by the estate after the commencement of the case to the extent provid-

ed by such security agreement and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing, and based on the equities of the case, orders otherwise. (*Underline Emphasized*)

**9.** The Unsecured Creditors' Committee and RHC support Debtor in its Motion, consequently, any reference to the Debtor's position shall mean for purposes of this motion that the Unsecured Creditors' Committee and RHC support such contention.

**10.** The Honorable Samuel Bufford, Bankruptcy Judge, Central District of California, finds that if BAP decisions are not controlling, then the BAP decisions in *Windmill Farms* and *Proudfoot* would also not be controlling. Thus, there would not be any precedent requiring Bankrupt-

explained the policy behind the Bankruptcy Appellate Panel:

> BAP was [designed] to provide a uniform and consistent body of bankruptcy law through the entire circuit. In order to achieve this desired uniformity, the decisions of the Bankruptcy Appellate Panel must be binding on all of the bankruptcy courts from which review may be sought, ie, each district in the Ninth Circuit. *In re Windmill Farms, Inc.*, at 622.

█ Deerport argues that the Court in *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470 (9th Cir.1990), effectively holds that BAP decisions cannot bind District Courts. Thus, if this case were appealed to the District Court, then the District Court would not have to follow the BAP. "And if the District Court is not bound, then reason would say this one shouldn't [be bound]". Deerport's Counsel, January 8, 1993 Transcript, p. 34, lines 14 & 15. This argument ignores the need for uniformity in the specialized body of Bankruptcy Law by Bankruptcy Courts. A further argument could be made if Deerport's argument was extended. For instance, what if a District Court Judge from Tucson follows a BAP decision and a District Court Judge from Phoenix does not follow the same BAP decision? We could speculate as to whether the Bankruptcy Judge would be required to follow the Tucson District Judge or the Phoenix District Judge or just follow the BAP. Such arguments in the posture of the case are similar to the philosophers' questions of the Middle Ages, where the philosophers postulated as to how many angels could stand on a point of a needle. This Court finds and concludes that BAP authority is controlling on the Bankruptcy Court within this district pursuant to *Windmill Farms* and *Proudfoot* and as applicable to the case in chief.

The BAP in *Northview* analyzed whether revenue generated from a hotel should be considered proceeds, profits or rents. The BAP held that revenue derived from a hotel should be considered an "account" and

that 11 U.S.C. § 552 does not extend to accounts, thus, the security interest was extinguished upon the filing of the petition. The BAP decision reasoned that hotel revenues are not "proceeds" because proceeds are generated from pre-petition personal property converted to some other form of property. Hotel revenues are not "profits" which refer to the sale of real property to which a security interest was attached and perfected before the bankruptcy filing. Finally, the BAP Court in *Northview* reasoned that the weight of authority holds that hotel revenues are "accounts" (i.e., personal property) rather than rents (i.e., real property). *Id.* *In re Sacramento Mansion, Ltd.*, 117 B.R. 592 (Bankr.D.Colo. 1990) (hotel revenues are accounts under California law); *In re M. Vickers, Ltd.*, 111 B.R. 332 (Bankr.D.Colo.1990) (hotel revenues are accounts under Colorado law); *In re Ashkenazy Enterprises*, 94 B.R. 645 (Bankr.C.D.Cal.1986) (hotel revenues are accounts under California law).

Deerport also contends, with reference to the recent *Everett* decision that the opinion of the Honorable Redfield T. Baum should be followed in this case. The Bankruptcy Court in *Everett* did not follow the result in the BAP decision in *Northview*. In *Everett*, the Debtor was a private golf club which also rented 50 suites to guests of the golf club and the public. Debtor's lender was given a security interest in Debtor's real property and certain personal property. *Id.*

The Court in *Everett* ruled that the security interest for the purposes of the subject hearing was perfected but the Bankruptcy Court needed further briefing as to whether the lender's security interest may have been unperfected due to a problem with the financing statement caused by a recent name change of Debtor. The Bankruptcy Court further held that the lender's security interest in the suite revenue continued after the filing pursuant to § 552(b). The Bankruptcy Court in that case reasoned that hotel revenues are not accounts. *Id.* at 457. An account is defined under the

---

cy Courts to follow BAP decisions. However, Judge Bufford analyzes the relationship between the BAP and the Ninth Circuit Court of

Appeals and finds that the BAP is a unit of the Circuit Court and as such the BAP is binding on all lower courts thereby resolving the issue.

Arizona Uniform Commercial Code as "any right to payment for *goods* sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance" (emphasis added). The Court ruled that the suite revenue did not come within the definition of an account. The Court further reasoned that a legal distinction between a lease and a license should not be relied upon but rather the Court looked to Websters dictionary to define "rent". Websters defines rent to mean "a usually fixed periodical return made by a tenant or *occupant* of property to the owner for the possession and use thereof." (Emphasis added). *Id.* at 457. The Bankruptcy Court went on further to rule that the term rents under § 552(b) should be interpreted broadly to include revenue generated from occupants of a hotel although they are not considered tenants of the hotel.

Fully considering the above analysis, this Court finds and concludes that *Everett* is inapplicable to this case. First, the holding is not pertinent because the Court held that revenues from suites at a golf club should be considered rent, however, the case at bar however is a hotel rather than a golf club which may be a distinction without substance but more importantly, the Court in *Everett* did not apply the controlling BAP opinion in *Northview* which effectively held hotel revenue does not constitute rent. This Court therefore cannot accept the reasoning in *Everett* or follow *Everett* concerning the issue of 11 U.S.C. § 552's applicability to Room Revenue for the principal reason that the opinion fails to accept BAP as controlling authority which is ultimately the law of this case.

Deerport also contends that this Court should follow the District Court decision in *S.F. Drake Hotel.* In *S.F. Drake Hotel,* the District Court affirmed a Bankruptcy Court decision and reasoned that BAP decisions are not binding on District Courts and that the BAP decision in *Northview* held, without discussion, that hotel revenues are not rents. The *S.F. Drake Hotel* decision emanates from the Northern District of California and is not considered binding on this Court. Additionally, the decision is contrary to the majority view regarding the treatment of hotel revenue. Therefore, this Court declines to follow the District Court decision in the *S.F. Drake Hotel.*

Moreover, the Court finds and concludes that the Facility Revenue should not be considered rents, proceeds or profits. The BAP decision in *In re Zeeway Corp.* by which this court is bound noted that revenues generated from a restaurant or a retail store at a raceway should not be considered rents or profits because the revenue was generated from the services at the raceway rather than generated from the real property. In the instant case the Facility Revenue is generated from services provided at the Resort such as food, beverages and tennis and other services. The revenue generated from such services cannot properly be considered rents or profits. Consequently, pursuant to 11 U.S.C. § 552, the security interest in such Facility Revenue would be extinguished upon the filing of the petition because the revenue is not a rent, proceed or profit as defined under 11 U.S.C. § 552.

In conclusion, Deerport failed to prove that its documents grant a valid security interest in the Room Revenue and Facility Revenue under the undisputed facts and circumstances of this case or the applicable law.

Accordingly,

IT IS ORDERED granting Debtor's motion for the use of income from Debtor's business operations pursuant to the foregoing.