## In re COUNTRYSIDE BOWLING CENTER, INC., d/b/a Countryside Lanes, Debtor.

**Bankruptcy No. 96–13336–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 1, 1996.

Thomas C. Little, Clearwater, FL, for Debtor.

John Bianco, Tampa, FL, for Amsouth Bank of Florida.

## ORDER ON EMERGENCY MOTION TO PROHIBIT USE OF CASH COLLATERAL OR FOR ADEQUATE PROTECTION BY AMSOUTH BANK OF FLORIDA

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is an Emergency Motion to Prohibit Use of Cash Collateral or for Adequate Protection filed by Amsouth Bank of Florida (Amsouth). Amsouth seeks an order prohibiting Countryside Bowling Center, Inc. (Debtor) from using cash collateral or, in the alternative, requiring the Debtor to furnish adequate protection.

Amsouth contends that it has a valid perfected security interest in the real property owned by the Debtor by virtue of a mortgage it acquired by assignment. In addition, as a result of a properly recorded UCC–1 Financing Statement, Amsouth claims it has a security interest in the furniture, furnishings, fixtures and equipment and assignment of rents and profits. Amsouth maintains that concurrent with the execution of a modified note, the Debtor executed and delivered to Amsouth a collateral assignment of rents and leases and Amsouth claims to have a security interest in all accounts, contract rights, equipment, and all profits derived from any sale or destruction of the collateral.

Based on the foregoing, it is Amsouth's contention that it has a first lien in all post-petition rents, issues, profits, revenue, income and benefits flowing or derived from the cash collateral and unless the Debtor furnishes adequate protection of Amsouth's interest this Court should prohibit the Debt-

or from continuing to use the funds derived from the cash collateral.

The Debtor recognizes the interest claimed by Amsouth and agrees to furnish adequate protection concerning the rent it collects from the tenants on the premises and to segregate those funds. Further, the Debtor agrees to comply with such additional adequate protection as is generally furnished by Chapter 11 debtors:, e.g., furnishing copies of the reports it files with the United States Trustee to Amsouth, furnishing proof of adequate insurance of the premises, and consenting to granting a continuing security interest in the collateral Amsouth had prior to the commencement of the case. However, the Debtor contends that the money it is collecting from the operation of the bowling alley is not cash collateral, therefore, it has a right to use the same to sustain the continuing operation of the bowling alley.

In response, Amsouth contends that the monies collected from the customers who are paying for the use of the facilities is, in fact, cash collateral analogizing those revenues to revenues derived from motel and hotel rooms, which by virtue of a 1994 amendment to § 363(a) of the Bankruptcy Code, the Debtor is not permitted to use unless it furnishes adequate protection.

Neither research of counsel nor independent research reveal any persuasive authority on this point. However, Amsouth relies on the pre-amendment cases of *In re General Associated Investors Limited Partnership*, 150 B.R. 756 (Bankr.D.Arizona 1993) and *In re GGVXX, Ltd.*, 130 B.R. 322 (Bkrtcy. D.Colo.1991). In *General Associated*, the Bankruptcy Court for the District of Arizona concluded that revenues generated by a Chapter 11 debtor from operation of a resort facility, including food and banquet rooms, were not rents, profits or proceeds. Thus, any security interest held by the creditor did not extend to such revenues and the properties acquired after commencement of the case were not subject to a pre-petition lien. In *GGVXX, Ltd.*, the Bankruptcy Court in Colorado held that revenues collected from greens fees and similar use fees from the Debtor's golf course were not cash collateral

for which the Debtor required Court authorization to utilize.

Relying on these two cases, Amsouth now urges that, by virtue of the amendment, the operation of the bowling alley is similar to the operation of a golf course; therefore, the Colorado Court would consider the monies derived from greens fees to fall within the scope of the amendment and be characterized as cash collateral. This Court is constrained to reject such a pro-position and is of the opinion that to equate the funds derived from the operation of the bowling alley with funds collected by a hotel or motel operator from room rents would be an unwarranted extension of the scope of cash collateral. This Court is satisfied that the amendment was designed to limit the scope of cash collateral to monies derived from operating public facilities, not hotels, motels or other lodging properties.

For the reasons stated, this Court is satisfied that while Amsouth has a valid protectable interest in rents collected by the Debtor from the tenants, it does not have such an interest in the funds derived from the operation of the bowling alley.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Emergency Motion to Prohibit Use of Cash Collateral or for Adequate Protection filed by Amsouth Bank of Florida be, and the same is hereby denied in part and granted in part and the Debtor shall keep all rents collected from the tenants in a segregated account and account to Amsouth for all rents collected and shall not use any of the rents collected without authority from this Court. It is further

ORDERED, ADJUDGED AND DECREED that the Motion of Amsouth as it relates to the funds collected from the operation of the bowling center be, and the same is hereby, denied.

DONE AND ORDERED.