**In re Alan K. JUNES, Cynthia M. Junes, Debtors.**

**Bankruptcy No. 386–04572–H13.**

United States Bankruptcy Court, D. Oregon.

May 5, 1987.

Leonard Beasley, Portland, Or., for debtors.

Gerald Douglas, Portland, Or., for IRS.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Chief Judge.

This matter came before the court upon the debtors' objection to the claim of Internal Revenue Service (IRS). The IRS filed claims for taxes due in 1980, 1983, 1984 and 1985. The parties agree that the 1980 tax claim in the amount of $14,146.00 plus penalties and interest is not entitled to priority under 11 U.S.C. § 507. If the other tax claims, which total $10,600, are unsecured, however, they are entitled to priority. 11 U.S.C. § 507. In addition, it appears from the schedules and arguments that the debtors have $8,405 worth of property which secures the claims of the IRS.

The debtors argue that the collateral should be applied to secure the most recent tax claims. Thus, only $2,195 ($10,600 − $8,405 = $2,195) would be priority unsecured and the entire 1980 tax claim would be general unsecured. In that event, the 1980 tax claim could be paid 0% in accordance with the confirmed plan.

The IRS argues that payments made in a Chapter 13 proceeding are involuntary and may, therefore, be applied by the IRS in order to maximize recovery. In addition, the IRS proposes to apply the $8,405 worth of collateral to payment on the 1980 taxes. The more-recent taxes would then be entitled to priority and would have to be paid in full within the life of the plan to satisfy 11 U.S.C. § 1322(a)(2) and paragraph 2(c) of the plan. Thus, the IRS asserts that it has an allowed secured claim of $8,405 and has an allowed unsecured claim without priority equal to the balance of the 1980 taxes and an allowed unsecured claim with priority for the 1983, 1984 and 1985 taxes.

The debtors argue that the plan provides nothing to secured creditors and that, since the IRS failed to object to the plan, the IRS is bound by the plan and would receive no payment under the plan upon its allowed secured claim.

While this may be true, it does not determine the status of the claim of IRS. It is axiomatic that a debtor's discharge in bankruptcy does not affect the validity of liens of creditors. Thus, if a creditor had a lien on the debtors' property upon the filing of the case, the creditor will still have a lien upon completion of a plan which pays nothing to the creditor. At that point, the creditor could immediately begin foreclosure on the property secured by the lien.

In fact, where a plan provides nothing to secured creditors, it is appropriate for the court to grant relief from stay to any secured creditor who so moves. Therefore, the debtors' initial argument is unavailing.

The IRS may allocate an involuntary payment from a taxpayer in any manner to maximize the amount of tax collected. *Liddon v. U.S.*, 448 F.2d 509 (5th Cir.1971), *Pacific National Ins. Co. v. U.S.*, 422 F.2d 26 (9th Cir.1970).

In chapter 13, the debtor must pay all claims entitled to priority under § 507 in full within the life of the plan. 11 U.S.C. § 1322(a)(2). In addition, with respect to allowed secured claims, the debtor must either:

1. Obtain the creditor's acceptance of the plan; or
2. Pay the allowed secured claim in full; or
3. Surrender the collateral.

11 U.S.C. § 1325(a)(5). Further, with respect to allowed unsecured claims, the debtor must pay at least what the creditors

would have received in chapter 7, § 1325(a)(4), and, upon objection, must commit his projected disposable income for a period of at least three years. § 1325(b).

 In the case at bar, the IRS holds claims entitled to priority, secured claims and general unsecured claims. Thus, any payment to the IRS is not at the direction of the debtor. Instead, the law *requires* that the plan provide for these payments to be made if the plan is to be confirmed. Accordingly, the court concludes that payments pursuant to a chapter 13 plan which are required by the provisions of Chapter 13 are involuntary payments.

Counsel have not cited any cases decided by a court located in the Ninth Circuit dealing with the specific question involved in this case, i.e., are payments upon a claim of IRS under a Chapter 13 plan, voluntary or involuntary? The court is, however, aware of one such case which has been decided in this circuit dealing with this question. This case is *Technical Knockout Graphics, Inc.*, 68 B.R. 463 (BAP 9th Cir.1986). The majority opinion in that case holds that such payments are voluntary. This court is however persuaded that the minority opinion holding that such payments are involuntary is the better reasoned view. While this court may consider the *Technical* case as authoritative it is not bound to follow the opinion in that case. The appeal to the Bankruptcy Appellate Panel was from a ruling of the Bankruptcy Court of the Central District of California. The BAP occupied the same position in the appellate scheme as the District Court for the Central District of California would have had the appeal been taken to it rather than to the BAP. An appeal from a ruling of either the BAP or a District Court is to the Circuit Court of Appeals for the Ninth Circuit. A ruling of one District Court is

not binding upon another District Court within the same circuit.[1]

As a result, the IRS may first allocate the collateral to the 1980 tax year thereby rendering the claim for 1980 secured to the extent of $8,405. The remainder of the 1980 claim is a general, unsecured claim. The 1983, 1984 and 1985 taxes will be allowed as priority claims except to the extent of the penalties for those years in the amount of $1,443.80. These penalties are not entitled to priority under § 507.

This memorandum opinion constitutes the courts findings of fact, conclusion of law, and, in accordance with Bankruptcy Rule 7052, they will not be separately stated.

---

1. The court is aware of the opinion in *In re Windmill Farms, Inc.,* 70 B.R. 618, 621 (BAP 9th Cir.1987), in which the court states that one of the reasons for establishing the BAP was to provide a uniform and consistent body of bankruptcy law throughout the entire circuit and that therefor the decisions of the BAP must be binding on all of the bankruptcy courts from which review may be sought, i.e., each district in the Ninth Circuit. Nothing in the statutes, no legislative history, no language in the order of the court of appeals establishing the BAP, no language in the order of the District Court for the District of Oregon approving the use of the BAP in Oregon, nor any other authority is cited in support of this proposition. This court has found no such authority.