In re Earle David VANASEN and Bonnie June Vanasen, Debtors.

FAR WEST FEDERAL BANK,
Plaintiff/Appellant,

v.

Earle David VANASEN and Bonnie June Vanasen,
Defendants/Appellees.

Bankruptcy No. 386–05554.

Civ. No. 87–909–PA.

United States District Court,
D. Oregon.

Dec. 15, 1987.

John H. Durkheimer, Sussman, Shank, Wapnick, Caplan & Stiles, Portland, Or., for plaintiff/appellant.

Stephen R. Grensky, Kent V. Snyder, Snyder Bankruptcy Legal Services, Portland, Or., for defendants/appellees.

## OPINION

PANNER, Chief Judge.

Appellant Far West Federal Bank (Bank) appeals a final order of the bankruptcy court denying its motion for relief from the automatic stay. I affirm.

### BACKGROUND

On October 18, 1971, and September 16, 1982, Earle and Bonnie Vanasen (debtors) borrowed money from the Bank. In exchange, the debtors signed two promissory notes, a mortgage, and a trust deed in favor of the Bank. The mortgage and trust deed cover the debtors' principal residence. The notes require a total payment of $639.00 per month. The last payment on the notes is due after 1992.

On October 15, 1986, the debtors filed a Chapter 13 petition. The debtors filed a plan which provides: "The following creditors' claims are fully secured, shall be paid directly by the debtors, and shall receive no payments under paragraph 2 above: ... Far West Federal Bank."

On December 19, 1986, the bankruptcy court confirmed the debtors' plan. On March 18, 1987, the Bank moved for relief from the automatic stay, alleging that the debtors were in default of their payments. On April 17, 1987, at a hearing on its motion, the Bank admitted that the value of the property securing the notes exceeded the amount due to the Bank by approximately $20,000. The bankruptcy court, noting that the Bank would not be economically harmed by a continuation of the automatic stay, denied the Bank's motion for relief from the stay, to allow the debtors a reasonable opportunity to sell the property.

## STANDARD

Findings of fact must be upheld unless clearly erroneous. Conclusions of law are reviewed *de novo*. *Daniels–Head & Assoc. v. Mercer, Inc. (In re Daniels–Head & Assoc.)*, 819 F.2d 914, 918 (9th Cir.1987).

## DISCUSSION

The Bank contends that the automatic stay does not apply or, in the alternative, that the court modified the Bank's rights in violation of 11 U.S.C. § 1322(b)(2).

### I. *The Automatic Stay.*

The Bank contends that the debt owing is a post-petition debt, which is not subject to the automatic stay. It states that out of an abundance of caution, although not required to do so, it moved for relief from the automatic stay. The debtors argue that the Bank cannot raise this issue for the first time on appeal and, even if I decide to consider it, the automatic stay does apply.

When an argument is raised for the first time on appeal, the court, in its discretion, may choose not to consider it. *Less–Carney & Co. v. Morrow (In re Kenitra, Inc.)*, 64 B.R. 841, 842 (Bankr. 9th Cir.1986). This is especially appropriate when the appellant gives no reason for its failure to bring the matter to the attention of the bankruptcy judge. *Id.* Nevertheless, if the argument may determine the outcome on appeal, the court may choose to address the issue. *In re Windmill Farms, Inc.*, 70 B.R. 618, 621 n. 1 (Bankr. 9th Cir.1987).

Here, the Bank gives no reason for its failure to present this issue to the bankruptcy court. However, because the application of the automatic stay could be dispositive of the appeal, I will address the merits.

Title 11, section 362(a) provides that the filing of a bankruptcy petition stays:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [and]

. . . .

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; ...

The Bank contends that the confirmation of the debtors' plan created a new obligation. When the debtors defaulted on their payments under the plan, the Bank urges that a cause of action arose on a post-petition debt. Therefore, the Bank contends that a state court foreclosure action on this "new" obligation is not barred by the automatic stay, citing *In re Nicholson*, 70 B.R. 398 (Bankr.D.Colo.1987).

In *Nicholson*, a creditor, upon the debtor's default, brought a state court foreclosure action against the debtor's principal residence, the sole security of the debt. The creditor claimed that the automatic stay did not apply after the debtor's Chapter 13 plan was confirmed. The debtor moved the bankruptcy court for a determination that the stay applied and offered to cure the post-confirmation defaults. The court held that the automatic stay did not apply. The court found that confirmation of the plan "has the effect of making a new agreement between the debtor and the creditor with a new obligation to be paid in the manner provided for by the plan." *Id.* at 400. The court stated that when the

debtor defaults after confirmation on his obligations under the plan, "the secured creditor's remedy is to foreclose the lien which the creditor was granted by the terms of the plan." The court noted that such a foreclosure action would not constitute an act to collect a prepetition debt, because it is based upon the new obligation arising from the confirmed plan. *Id.*

 *Nicholson* has been cited with disapproval in this district in *In re McCullom,* 76 B.R. 797 (Bankr.D.Or.1987). In *McCollum,* a creditor moved for relief from the automatic stay when the debtors defaulted on their post-confirmation payments. The Chapter 13 plan provided that the debtors were to pay the creditor directly. Upon default, the debtors proposed to amend the plan to pay the creditor through the trustee an increased amount to cure the post-confirmation arrearages. The creditor's claim, as here, was secured solely by the debtors' principal residence. Chief Judge Henry Hess held that the automatic stay applied to post-confirmation defaults. Judge Hess declined to follow *Nicholson* because it incorrectly assumed that a confirmed Chapter 13 plan created a new obligation and a new lien. Unlike Chapter 11, where the confirmation order discharges prepetition claims, in Chapter 13, the confirmation order does not discharge all prepetition claims. A Chapter 13 debtor is not entitled to discharge until the plan has been completed. If, as *Nicholson* assumed, all obligations arose from the confirmed plan, once the plan was completed, there would be no remaining debts to discharge.

Judge Hess also noted that under *Nicholson,* if property was encumbered by more than one lien, upon confirmation, all liens would have equal priority or, if the plan covered the first mortgage, but failed to mention the second mortgage, upon confirmation, the second mortgage would have priority over the new lien of the first mortgage. *Id.* at 800 n. 1.

 I agree with Judge Hess's well-reasoned opinion in *McCullom.* I find the automatic stay applies to post-confirmation defaults.

## II. *Section 1322(b)(2).*

 The Bank contends, in the alternative, that the bankruptcy court modified its rights in violation of 11 U.S.C. § 1322(b)(2).

Section 1322(b) provides that the plan may:

> (2) modify the rights of holders of secured claims, other than a claim secured by a security interest in real property that is the debtor's principal residence, ... [and]

> . . . . .

> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date upon which the final payment under the plan is due; ...

The Bank contends that because its interest is secured solely by the debtors' primary residence, the court has no authority to alter its rights, including its right to foreclose on default, citing *In re Gavia,* 24 B.R. 573 (Bankr. 9th Cir.1982).

The legislative history of Chapter 13 demonstrates congressional intent to protect home mortgage lenders. *Seidel v. Larson (In re Seidel),* 752 F.2d 1382, 1383 (9th Cir.1985). Although the court is barred from modifying the rights of the creditor holding a security in the debtor's primary residence, the court must analyze the plan to determine "whether the plan will so affect the creditor's rights that it amounts to 'modifying' them, in violation of § 1322(b)(2)." *Id.*

The Ninth Circuit has consistently held that section 1322(b)(2) is violated when a plan permits a debtor to cure a default by extending payments beyond the maturity date of a home loan. *Seidel,* 752 F.2d at 1386 (obligation matured prior to debtor filing Chapter 13 petition); *Western Equities, Inc. v. Harlan (In re Harlan),* 783 F.2d 839 (9th Cir.1986) (obligation matured during pendency of Chapter 13 case).

Here, unlike the Ninth Circuit cases, the obligations mature after the plan ends.

Prior to the end of the plan in 1990, the debtors will have to sell their property or the Bank will have the right to foreclose upon the expiration of the automatic stay. Rather than extending the maturity date of the loan, this effectively accelerates it.

The Bank contends that *Gavia* is controlling authority precluding the bankruptcy court and this court from denying its motion for relief from the stay. I disagree.

In *Gavia*, the bankruptcy court refused to confirm a Chapter 13 plan which proposed to pay all creditors with the proceeds from the sale of the debtor's home within six months after the confirmation of the plan. In affirming the bankruptcy court, the Bankruptcy Appellate Panel (BAP) found that the plan was infeasible, that the plan proposed a violation of section 1322(b)(2) by withholding payments for six months, and that the debtors did not qualify for Chapter 13 relief. *Gavia*, 24 B.R. at 574–76.

*Gavia* is not on point. The *Gavia* court denied confirmation of an original Chapter 13 plan that proposed from the outset to withhold payment from the creditors with claims secured solely by the debtor's principal residence. As the BAP noted, the plan "creates rather than cures a default." *Gavia*, 24 B.R. at 575.

Here, unlike *Gavia*, the debtors proposed a viable plan which did not violate the Bank's rights or create a default. That plan was confirmed. Later, when the debtors defaulted, the bankruptcy court, in an efort to save a viable, confirmed plan, allowed the debtors a reasonable time to *cure.*

In addition, it is questionable whether the decision in *Gavia* would be binding on this court. *Gavia* was an appeal from the Bankruptcy Court of the Eastern District of California. The BAP sat in a position equivalent to the District Court for the Eastern District of California. Because the decision of another district court would not be binding on this court, it follows that a decision of the BAP on a case arising from another district would not be binding on this court. An appeal from the decision of both this court and the BAP is to the Ninth Circuit. *Compare In re Windmill*

*Farms, Inc.,* 70 B.R. 618, 622 (Bankr. 9th Cir.1987) (holding BAP decisions are binding authority on all districts within the Ninth Circuit) *with In re Junes,* 76 B.R. 795, 797 & n. 1 (Bankr.D.Or.1987) (holding BAP decisions arising from another district are not binding).

Read together sections 1322(b)(2) and (5) provide that the plan may provide "for the curing of *any* default" as long as it does not modify the rights of a creditor's claim secured solely by the debtor's principal residence. Here, the Bank has an adequate security cushion which protects it from economic harm. Allowing the debtors a reasonable time to sell the property and pay the debt does not "so affect" the Bank's rights as to violate section 1322(b)(2). *See Seidel,* 752 F.2d at 1383. The Bank is merely faced with a delay. That delay does not impermissibly extend the notes beyond their maturity date nor does it jeopardize the Bank's security interest. The Bank is adequately protected and will be paid in full within a reasonable time. The Bank has wholly failed to show that it is entitled to relief from the automatic stay under 11 U.S.C. § 362(d).

Under the Bank's theory of this case, if the debtor were in technical default of the notes, such as a late payment, the Bank could bring a state court foreclosure action, which would substantially affect the debtors' plan, and the bankruptcy court would be powerless to protect the debtors or to allow time to cure the default. Although Congress intended to protect home mortgage lenders, there is no indication it intended to give them carte blanche. Chapter 13 was designed to allow a debtor with a regular income time to rehabilitate his finances. Here, the Bank will not be economically harmed by the delay. The equities of this case tip in favor of allowing the debtors time to make the fresh start intended by the Bankruptcy Code.

## CONCLUSION

I affirm the order of the bankruptcy court denying Far West Federal Bank's motion for relief from the automatic stay.