**In re Harry D. PROUDFOOT, III, Debtor.**

**PHILADELPHIA LIFE INSURANCE COMPANY, Appellant,**

**v.**

**Harry D. PROUDFOOT, III, Robert W. Myers, Chapter 13 Trustee, United States Trustee, Appellees.**

**BAP No. OR-92-1219-JRAs.**

**Bankruptcy No. 390-31465-H13.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on July 24, 1992.

Decided Sept. 14, 1992.

Daniel F. Vidas, Portland, Or., for Philadelphia Life.

Eric W. Olsen, Salem, Or., for Harry D. Proudfoot II.

Before: JONES, RUSSELL and ASHLAND, Bankruptcy Judges.

PER CURIAM:

The appellant challenges an order approving the debtor's plan under Chapter 13 of the Bankruptcy Code. The plan called for a single payment to the creditor-appellant, following the sale of the debtor-appellee's residence.

We reverse and dismiss.

## I.

A series of Chapter 13 plans submitted by Harry D. Proudfoot, III ("Proudfoot" or "the Debtor") were confirmed by the bankruptcy court. Proudfoot originally filed a Chapter 13 bankruptcy petition on April 12, 1990. Under the original plan, the debtor was to make 60 monthly payments to the Chapter 13 trustee. From these payments, the trustee was to disburse $1861.00 per month to appellant Philadelphia Life Insurance Company ("Philadelphia Life").[1] This amount represented the regular monthly mortgage payment due under the mortgage and trust deed on Proudfoot's residence.

After confirmation, Proudfoot failed to keep up with the payments required under the original plan. Proudfoot then submitted his first modified plan. This plan still called for Philadelphia Life to receive its regular monthly mortgage payment from the trustee, but increased the payments to cure the pre-petition and post-petition defaults and taxes. The bankruptcy court again confirmed the plan, but this time Proudfoot failed to make any of the required payments. The Debtor submitted his second modified plan, but it was withdrawn before any hearing could be held. Proudfoot then submitted his third modified plan, which, incredibly, provided only

$200 per month to be paid to the trustee. No provision was made for any regular future mortgage payments to Philadelphia Life, nor for any curing of the arrearages or delinquent property taxes. Instead, Proudfoot contemplated selling his residence and using the proceeds to pay off Philadelphia Life. While the value of the residence was shown as $250,000 in the original bankruptcy schedules, Proudfoot listed his residence for sale at a price of $415,000.[2]

Philadelphia Life opposed the third modified plan, moving instead for dismissal or conversion to Chapter 7. But the bankruptcy court denied the motion to dismiss and confirmed the third modified plan—disregarding Philadelphia Life's additional objection that the plan impermissibly modified its rights in violation of 11 U.S.C. §§ 1322(b)(2) and (5).

## II.

This panel must determine whether the order approving the third modified plan impermissibly modified Philadelphia Life's rights under 11 U.S.C. §§ 1322(b)(2) and (5). On such an appeal, a bankruptcy court's findings of fact are reviewed under a clearly erroneous standard and its conclusions of law are reviewed *de novo*. *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1377 (9th Cir.1985).

The issue in this appeal has already been considered by the BAP in the case of *In re Gavia*, 24 B.R. 573 (9th Cir. BAP 1982). Under the facts in *Gavia*, several Chapter 13 debtors proposed to pay all of their creditors in full from the sale proceeds of their homes. Pending these final payments, however, the debtors proposed that all contractual installment payments to the creditors would be withheld for as long as six months. 24 B.R. at 574.

■ A Chapter 13 plan may only modify the rights of a creditor whose only security

---

1. Philadelphia Life was also to receive $250 per month to apply to pre-petition and post-petition arrearages, and another $600 per month to apply to delinquent property taxes.

2. The plan provided for the listed price to be reduced by $2000 every 30 days until the house sold. If it did not sell, however, over 82 months would pass before the listed price would equal the property's value in the schedules.

878

is the debtor's home if the plan merely seeks to cure a default within a reasonable time. 11 U.S.C. § 1322(b)(5). In *Gavia*, the BAP affirmed the bankruptcy court's decision to deny confirmation of the plans, holding that the exception to § 1322(b)(2) [3] did not apply:

> Withholding current installments ... *creates* rather than cures a default. We therefore conclude that a plan that proposes the withholding of monthly installments due on the obligation for *any* period of time modifies the rights of the expected creditors in violation of 11 U.S.C. § 1322(b)(2).

24 B.R. at 575 (emphasis added).

■ The facts of *Gavia* are nearly identical to those in this appeal. Proudfoot planned to sell his home within the time period covered by the plan and to use the proceeds to pay off Philadelphia Life. Proudfoot's third modified plan made no provision for making the regular future mortgage payments as they became due. The plan did not cure a default as allowed by 11 U.S.C. § 1322(b)(5), it created one, just as the *Gavia* plans did. Under the rule from *Gavia*, Proudfoot's plan violated 11 U.S.C. § 1322(b)(2), since, by withholding payments, the plan created defaults which modified Philadelphia Life's rights as a creditor whose only security was the Debtor's principal residence.

### III.

■ The confirmation of the Debtor's plan is clearly contrary to the Bankruptcy Code and a previous BAP decision. Citing opinions of the trial court, Proudfoot argues that BAP decisions are only binding in the district in which they originate.[4] A passage from *In re Vanasen*, 81 B.R. 59

(D.Or.1987), illustrates the position taken by the trial court here:

> Because the decision of another district court would not be binding on this court, it follows that a decision of the BAP on a case arising from another district would not be binding on this court.

81 B.R. at 62.

In this appeal, the Debtor argues that the BAP's *Gavia* decision was not binding on Judge Hess [5] since it did not originate as an appeal to a bankruptcy appellate panel sitting in the District of Oregon.[6] The BAP has, however, addressed the question of the extent of its authority in the case of *In re Windmill Farms, Inc.*, 70 B.R. 618 (9th Cir. BAP 1987), *rev'd on other grounds*, 841 F.2d 1467 (9th Cir.1988). In that decision, the panel stated that BAP decisions must be binding on all bankruptcy courts in the Ninth Circuit. The panel also suggested that one of the reasons for establishing the BAP was to provide a uniform and consistent body of bankruptcy law throughout the Ninth Circuit. The desired uniformity cannot be achieved without making BAP decisions binding on all bankruptcy courts in the Ninth Circuit, in the absence of contrary authority of the district court. 70 B.R. at 622.

While the BAP gave no authority for its position in *Windmill Farms*, it was cited with approval by *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470 (9th Cir.1990). In that decision, the Ninth Circuit declined to decide the authoritative effect of a BAP decision, but Judge O'Scannlain specially concurred, proposing that the Judicial Council for the Ninth Circuit adopt an order requiring BAP decisions to bind all the bankruptcy courts of the Circuit. Judge O'Scannlain reasoned that this would enable the BAP to pursue its original goal of

---

**3.** 11 U.S.C. § 1322(b)(2) prohibits the modification of the rights of a creditor whose only security is real property which is the principal residence of the debtor.

**4.** *See In re Junes,* 76 B.R. 795, 797 n. 1 (Bankr. D.Or.1987), *aff'd,* 99 B.R. 978 (9th Cir. BAP 1989); *In re Crook,* 62 B.R. 937, 941 n. 2 (Bankr. D.Or.1986), *rev'd,* 79 B.R. 475 (9th Cir. BAP 1987); *In re Kao,* 52 B.R. 452, 453 (Bankr.D.Or. 1985).

**5.** In the decision of the trial court, Judge Hess relied solely on *In re Vanasen,* 81 B.R. 59 (D.Or. 1987). *Vanasen* is distinguishable from the instant appeal, however, since after confirmation, the *Vanasen* debtors defaulted on required plan payments. Here, the Proudfoot plan itself seeks to create the defaults. This is analogous to *Gavia,* but not to *Vanasen.*

**6.** *Gavia* originated as an appeal from the Eastern District of California.

developing a uniform body of law. 904 F.2d at 472.

It is the position of this panel that BAP decisions originating in any district in the Ninth Circuit are binding precedent on all bankruptcy courts within the Ninth Circuit in the absence of contrary authority from the district court for the district in which the bankruptcy court sits.

The bankruptcy court order approving the modified Chapter 13 plan and denying the creditor's motion to dismiss is hereby reversed, the plan being an impermissible modification of Philadelphia Life's rights as a creditor under §§ 1322(b)(2) and (5) of the Bankruptcy Code. Additionally, the Debtor's Chapter 13 case is hereby dismissed.