In re GLOBE ILLUMINATION CO., Debtor.

Jeffrey C. COYNE, Trustee, Plaintiff,

v.

WESTINGHOUSE CREDIT CORPORATION, et al., Defendants.

Bankruptcy No. LA 89–01354 SB.

Adv. No. LA 91–06235 SB.

United States Bankruptcy Court, C.D. California.

Jan. 20, 1993.

David R. Weinstein, Weinstein, Eisen & Doherty, Los Angeles, CA, for plaintiff.

Arnold Quittner of Strook, Strook & Lavan, Los Angeles, CA, for defendants.

## AMENDED OPINION ON DEFENDANT'S MOTION TO DISMISS COMPLAINT

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

In this leveraged buyout case the trustee has brought several causes of action against the former owners of the debtor corporation. Defendants have moved to dismiss the entire complaint, under Fed. R.Bankr.P. 7012(b) and Fed.R.Civ.P. 12(b)(6), on the grounds that these causes of action are barred by the two-year statute of limitations in 11 U.S.C.A. § 546(a)(1).

Since there is a Ninth Circuit Bankruptcy Appellate Panel (BAP) decision directly contrary to defendants' argument on this issue, this motion raises the question whether the BAP's decision is binding precedent on this Court. If BAP decisions are binding precedent on bankruptcy courts in the circuit in which the BAP is located, the

trustee's claims are not barred by the statute of limitations. If BAP decisions are not binding, this Court is free to make an independent determination of this issue in this case.

The Court holds that decisions of the Ninth Circuit BAP are binding on bankruptcy courts in this circuit. In consequence, the trustee's claims are not barred by the § 546(a) statute of limitations, and the motion to dismiss is denied.

## II. FACTS

Westinghouse Credit Corporation ("Westinghouse") purchased the stock of debtor Globe Illumination Co. ("Globe") in a leveraged buyout transaction in July, 1986. On January 23, 1989 Globe filed its chapter 11 petition. In May, 1989 the case was converted to a case under chapter 7 and plaintiff Jeffrey C. Coyne was appointed as interim trustee.

Coyne held a meeting of creditors pursuant to Bankruptcy Code § 341(a)[1] on July 21, 1989. However, since no representative of the debtor appeared at the meeting, it was continued to August 11, 1989, at which time Coyne became the permanent trustee.

On August 8, 1991 Coyne filed this adversary proceeding against Globe's former owners to allege that the leveraged buyout was a fraudulent conveyance. The defendants have moved for dismissal under Fed.R.Bankr.P. 7012(b) and Fed.R.Civ.P. 12(b)(6), on the grounds that the claims are barred by the statute of limitations.

Defendants contend that the § 341(a) meeting was held on July 21, 1989, that the trustee was appointed at that meeting, and that the two-year statute of limitations prescribed in § 546(a)[2] runs from this date.

Thus, because the action was not filed until August 8, 1991, they submit that the claims of the trustee are barred.

The trustee, on the other hand, contends that he was not appointed until the August 11, 1989 meeting, when the debtor was actually present. Since this adversary proceeding was filed on August 8, 1991, the trustee contends that it was timely filed.

## III. ANALYSIS

### A. Statute of Limitations— BAP Authority

■ The resolution of this issue turns on when the trustee was in fact appointed. Normally this would be a question of fact, to be determined on the evidence presented to the Court. However, in this case the evidence is virtually identical to that before the Ninth Circuit Bankruptcy Appellate Panel in a reported case several years ago, which this Court must consider.

In *Kroh v. T.R.M. Mfg. (In re Conco Building Supplies)*, 102 B.R. 190 (9th Cir. BAP 1989), the Ninth Circuit BAP squarely addressed this issue. In *Conco* the debtor's counsel failed to appear at a § 341(a) meeting of creditors. The meeting was continued to a later date, at which time the trustee was appointed. The BAP held that the later date was the starting point for the running of the § 546 statute of limitations. It made this determination by examining Bankruptcy Rule 2003(b)(1), which provided:[3]

*Meeting of creditors.* The clerk shall preside at the meeting of creditors unless (1) the court designates a different person, or (2) the creditors who may vote for a trustee under § 702(a) of the Code and

---

1. Bankruptcy Code § 341(a) provides:

 Within a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors.

 11 U.S.C.A. § 341(a) (West Supp.1992). Section 343 requires the debtor to attend the meeting and to be examined:

 The debtor shall appear and submit to examination under oath at the meeting of creditors under section 341(a) of this title.

 11 U.S.C.A. § 343 (West Supp.1992).

2. 11 U.S.C.A. § 546(a) (West 1979) states:

 An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
 (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or
 (2) the time the case is closed or dismissed.

3. Fed.R.Bankr.P. 2003(b)(1) now provides that the United States trustee shall preside at the meeting of creditors.

who hold a majority in amount of claims that vote designate a presiding officer.... The business of the meeting *shall include the examination of the debtor under oath* and, in a chapter 7 liquidation case, may include the election of a trustee....

*Id.* at 192 (emphasis in original). From this language the *Conco* court determined:

The mandatory language that the meeting *"shall* include the examination of the debtor," supports a conclusion that the actual meeting of the creditors was not "held" until the ... date when the debtor appeared for the examination.

*Id.* at 192 (emphasis in original). The court also noted the § 343 requirement that the debtor attend the meeting to be examined, and the legislative history to § 343, which indicates that the purpose of the examination is to enable creditors and the trustee to determine if assets have improperly been disposed or concealed. *Id.* The court concluded by stating:

Based on this recognized purpose, the § 546(a)(1) time limitation should not begin to run until the trustee has had the opportunity to examine the debtor to assist in determining whether preferential transfers have occurred.

*Id.*

The Court finds that the facts in this case do not differ in any material respect from those in *Conco.* The BAP in *Conco* held that the § 546 statute of limitations does not begin to run until the debtor, or a representative of the debtor, is present at the § 341(a) meeting. Therefore, if the BAP's decision is binding on this Court, the Court must find that the statute of limitations did not begin to run until the meeting held on August 11, 1989, and that the trustee's complaint was filed within the statute of limitations. If the BAP's decision is not binding, on the other hand, the Court is free to consider whether to follow *Conco,* or whether to make a different determination of the applicable law.

Defendants argue that the BAP decision in *Conco* is not binding, and furthermore

that it is ill-conceived and should not be followed by this Court. The trustee apparently relied on *Conco* in determining when to file this adversary proceeding.

**B. Binding Force of BAP Decisions**

**1. Stare Decisis**

 Courts are bound by the decisions of law by higher courts under the principle of stare decisis. The doctrine of stare decisis derives from the maxim of the common law, "Stare decisis et non quieta movere," which literally means, "Let stand what is decided, and do not disturb what is settled." *See* 1B Jeremy C. Moore et al., *Moore's Federal Practice* ¶ 0.402[1] (2d ed. 1992). Moore's treatise describes the rule as follows:

The rule, as developed in the English law, is that a decision on an issue of law embodied in a final judgment is binding on the court that decided it and such other courts as owe obedience to its decisions, in all future cases.

*Id.* Under this principle a decision of a circuit court of appeal is binding on all lower courts in the circuit, including district courts and bankruptcy courts (absent a contrary United States Supreme Court decision). *Zuniga v. United Can Co.,* 812 F.2d 443, 450 (9th Cir.1987); *In re Shattuc Cable Corp.* 138 B.R. 557, 565 (Bankr. N.D.Ill.1992); *In re Summit Ventures, Inc.,* 135 B.R. 483, 491 (Bankr.D.Vt.1991); *Kachanizadeh v. Denlinger (In re Kachanizadeh),* 108 B.R. 734, 737 (Bankr. C.D.Cal.1989); Paul B. Lindsey, *Stare Decisis—Blessed be the Tie that Binds (Or Does It?),* Norton Bankruptcy Law Advisor, July, 1992, at 1. This is true even if there is a split of opinion between the controlling circuit and another circuit court of appeals, and the lower court believes that the controlling circuit court is in error. *Zuniga,* 812 F.2d at 450; *Hasbrouck v. Texaco, Inc.,* 663 F.2d 930, 933 (9th Cir. 1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982); *Taffi v. United States (In re Taffi),* 144 B.R. 105, 108 (Bankr.C.D.Cal.1992).[4]

---

**4.** *See also Taffi v. United States (In re Taffi),* 144 B.R. 105, 107–08 (Bankr.C.D.Cal.1992), for a discussion of stare decisis.

2. Ninth Circuit Authority

The binding effect of BAP decisions on bankruptcy courts in this circuit has not been considered by the Ninth Circuit Court of Appeals itself (apart from the BAP). The only Ninth Circuit opinion that addresses this issue is Judge O'Scannlain's concurring opinion in *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470 (9th Cir. 1990), where he stated:

I ... write separately to propose that the Judicial Council of this Circuit consider adoption of an order requiring that Bankruptcy Appellate Panel (BAP) decisions shall bind all of the bankruptcy courts of the circuit....

The Judicial Council of this Circuit established BAP under the authority of 28 U.S.C. § 158(b)(1). In an Amended Order Establishing and Continuing the Bankruptcy Appellate Panel of the Ninth Circuit dated May 3, 1985, our Judicial Council outlined BAP's power and functions. This Amended Order provides that BAP may hear and determine appeals from all districts within the Ninth Circuit which have authorized use of the BAP.... The Amended Order does not describe, however, the binding effect of a BAP decision.

Making BAP decisions binding on all bankruptcy courts in the circuit would permit BAP to develop a uniform body of law. BAP was originally conceived with this goal in mind. To the extent that BAP decisions are not binding beyond the matter at hand, it is restricted from

reaching the goal which was the impetus for its creation.

*Id.* at 472 (citations and footnote omitted). Because the Ninth Circuit has not acted on the recommendation of Judge O'Scannlain in his concurring opinion,[5] there is no Ninth Circuit authority on this issue.

3. BAP Opinions

█ The BAP first addressed the issue of the binding authority of its decisions on bankruptcy courts in the circuit in *In re Windmill Farms, Inc.*, 70 B.R. 618 (9th Cir.BAP 1987), *rev'd on other grounds*, 841 F.2d 1467 (9th Cir.1988). *Windmill Farms* involved an attempt by a debtor to assume and assign a real property lease after the landlord had filed an unlawful detainer action[6] against the debtor, but before the landlord had obtained judgment for possession. The bankruptcy court had held that the lease had not yet been terminated by the landlord, and that it could be assumed and assigned. The landlord appealed to the BAP, and argued that district court precedent in the district required a finding that the lease had been terminated and was not assumable.[7] The BAP found that it was not bound by the district court precedent,[8] and upheld the bankruptcy court's decision. *Id.* at 622.

In the course of the *Windmill Farms* decision the BAP added a paragraph of dicta on the binding force of its decisions. It stated:

One of the reasons for establishing the BAP was to provide a uniform and consistent body of bankruptcy law through-

---

5. The Court is informed that a proposal to amend the BAP order is pending before the Ninth Circuit Judicial Council.

6. An unlawful detainer action is the California form of summary possession relief available to a landlord against a tenant who has not paid the rent due or who is no longer entitled to possession of the leased premises for some other reason. *See* Cal.Civ.Proc.Code §§ 1161–1179a (West 1982).

7. The bankruptcy court apparently had not considered the district court decision, which had been issued only three months earlier. Evidently this recent decision had not been called to the bankruptcy court's attention.

8. Curiously, the BAP took the view that the bankruptcy court was bound by the district court decision. *Id.*, at 621-22. If correct, this would produce the anomalous result that the bankruptcy court would be required to resolve an issue of law in conformity with the binding district court precedent, but the BAP would be free to resolve it differently on appeal in the same case. *See* Carrington, *An Unknown Court: Appellate Caseload and the "Reckonability" of the law of the circuit, in Restructuring Justice* 206, 212-14 (Arthur D. Hellman ed., 1990). This Court believes that the better view is that district court decisions on bankruptcy appeals are not binding on bankruptcy courts in the district. *See* Kathleen P. March & Rigoberto V. Obregon, *Are BAP Decisions Binding On Any Court?* 18 Cal.Bankr.J. 189 (1990).

out the entire circuit. In order to achieve this desired uniformity, the decisions of the Bankruptcy Appellate Panel must be binding on all of the bankruptcy courts from which review may be sought, i.e. each district in the Ninth Circuit. Any decisions to the contrary ... are in error.

*Id.*

The BAP recently reaffirmed its position in *Philadelphia Life Insurance Co. v. Proudfoot (In re Proudfoot),* 144 B.R. 876 (9th Cir.BAP 1992). The debtor in *Proudfoot* argued that a BAP decision on the permissible provisions of a chapter 13 plan was not binding on the bankruptcy court, because the BAP decision was not in a case that originated in the same judicial district as Proudfoot's case. In rejecting the debtor's argument, the BAP held:

> It is the position of this panel that BAP decisions originating in any district in the Ninth Circuit are binding precedent on all bankruptcy courts within the Ninth Circuit in the absence of contrary authority from the district court for the district in which the bankruptcy court sits.

*Id.* at 879.

However, decisions by the BAP on the binding force of its own determinations beg the issue at hand. If they are not binding, a holding by the BAP to this effect does not make them binding. Accordingly, this Court must make its own independent inquiry on this issue.[9]

### 4. March & Obregon Article

The issue of the binding authority of BAP decisions has been carefully examined by my colleague, The Honorable Kathleen P. March, and Rigoberto V. Obregon in their article, *Are BAP Decisions Binding on Any Court?* 18 Cal.Bankr.J. 189 (1990). March & Obregon take the position that BAP decisions are not binding on any court. They agree with the "minority view" that the BAP is in essence a court of appeal at the district court level for decisions by bankruptcy judges, and that the BAP sits in place of a district judge. *Id.* at 197. In consequence, they argue, a BAP opinion has the same binding precedential value as a decision by a single district judge. *Id.* at 197–98. They point out that it is well settled that a decision by a single district judge is not binding on other district judges in the same district. *Id.,* at 198; *Starbuck v. San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir.1977) (the doctrine of stare decisis does not compel one district judge to follow a decision of another in the same district); *Mueller v. Allen,* 514 F.Supp. 998, 1001 (D.Minn.1981), *aff'd,* 676 F.2d 1195 (8th Cir.1982), *aff'd,* 463 U.S. 388, 103 S.Ct. 3062, 77 L.Ed.2d 721 (1983) (district court not bound by rulings of three-judge district court in same district upholding constitutionality of statute); *Forward v. Cotton Petroleum Corp.,* 540 F.Supp. 122 (D.Colo.1982) (district court not bound by decisions of other district judges in same district).

March & Obregon next argue that a decision by a district judge is also not binding on bankruptcy judges in the district, because the bankruptcy court is a "unit" of the district court, and not an inferior court. A district judge sits in the same court as the bankruptcy judges, and his or her decision, even on an appeal from a bankruptcy judge, is another decision of the same court. Such a decision has no binding authority on other judges in the same court, including bankruptcy judges. March & Obregon at 198. The Court agrees with this argument.

In consequence, March & Obregon conclude, a BAP decision has no such binding

---

**9.** Bankruptcy court opinions are divided on this issue. Some opinions have agreed with the BAP that its decisions are binding on lower bankruptcy courts. *See Cog v. Heckenkamp (In re Heckenkamp),* 110 B.R. 1, 3 (Bankr.C.D.Cal. 1989); *Kachanizadeh v. Denlinger (In re Kachanizadeh),* 108 B.R. 734, 737 (Bankr.C.D.Cal. 1989). Others have taken the position that a BAP decision is not binding unless it is rendered in a case arising from the same judicial district as the one at issue. *See In re Junes,* 76 B.R. 795, 797 n. 1 (Bankr.D.Or.1987), *aff'd,* 99 B.R. 978 (9th Cir.BAP 1989); *In re Crook,* 62 B.R. 937, 941 n. 2 (Bankr.D.Or.1986), *rev'd,* 79 B.R. 475 (9th Cir.BAP 1987); *In re Kao,* 52 B.R. 452, 453 (Bankr.D.Or.1985). *See generally* March & Obregon, *supra* note 7.

authority, either. *Id.* A BAP decision, they contend, has no binding authority whatsoever, but has value only for its persuasive weight. *Id.* at 202–03.

The fundamental flaw in the foregoing analysis, in this Court's view, is the position of March & Obregon that the BAP is a unit of the district court in the district where the appeal arises. The Court agrees with March & Obregon that, if this is the proper view of the status of the BAP, its decisions (as well as those of district courts sitting on appeal in bankruptcy matters) are not binding on the bankruptcy courts in the district where the case arises (or anywhere else).

March & Obregon base this conclusion on three premises: (1) only the district court has authority to refer appeals from the district to the BAP; (2) when reviewing a decision of a bankruptcy judge, the BAP sits in place of a district judge, at the request of the district court; and (3) BAP members are officers of the district court. *Id.* at 193.

This argument is flawed in two respects. First, the conclusion does not follow from the premises. Second, the third of the foregoing premises is wrong. Both of these mistakes stem from a fundamental misunderstanding of the nature of the BAP as the court to which a bankruptcy appeal is referred.

The Ninth Circuit itself has given the clearest analysis of the status of the BAP. In *Briney v. Burley (In re Burley)*, 738 F.2d 981, 986 (9th Cir.1984), the court held that the BAP is an adjunct of the circuit court. In *Burley* the Ninth Circuit upheld the constitutionality of the issuance of orders by the BAP after the effective date of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (finding unconstitutional the statutory grant of jurisdiction to bankruptcy courts), on the grounds that the BAP was adequately controlled by Article III judges in the circuit court itself.

■ The Ninth Circuit in *Burley* found that the relationship between the BAP and the court of appeals is functionally equivalent to the relationship between a magistrate judge and a district judge.[10] *Burley*, 738 F.2d at 986. It follows that both a BAP judge and a circuit judge are judges of the circuit court, just as both a magistrate judge and a district judge are judges of the district court.

■ The BAP judges, sitting on the BAP, are not officers of the district court. They are officers of the circuit court, specially appointed to the BAP by the circuit court pursuant to an appointment power conferred by Congress. Bankruptcy appellate panels are authorized under 28 U.S.C.A. § 158(b)(1), which provides:

> The judicial council of a circuit may establish a bankruptcy appellate panel, comprised of bankruptcy judges from districts within the circuit, to hear and determine, upon consent of all the parties, appeals under subsection (a) of this section.

Thus a bankruptcy appellate panel is a unit of the circuit court, established by the judicial council of the circuit pursuant to express statutory authority granted by Congress.

■ The referral of a bankruptcy appeal to a BAP is a referral to *another court*, the circuit court, which in turn refers the appeal to its adjunct, the BAP. While the BAP decides the appeal in place of the district judge, the BAP is a unit of the circuit court, and not a unit of the district court. Consequently, a BAP decision is binding authority on all lower courts, just as any other circuit court's authority is binding on lower courts.

■ Perhaps the closest analogy to a referral of an appeal to a BAP is a federal court's referral of an issue of state law to the supreme court of the applicable state

---

10. The court in *Burley* conceded that the analogy between BAP judges and magistrate judges is not perfect. *Id.*, at 986–87. The court there found that the disanalogies did not have constitutional significance. The Court finds the disanalogies irrelevant to the case at bar.

for determination.[11] Such a referral results in a determination that is both binding on the referring court (which may be a federal court at any level, including the United States Supreme Court) and on the state courts in the state whose supreme court issues the opinion. *Tarr v. Manchester Insurance Corp.*, 544 F.2d 14 (1st Cir. 1976); *National Education Association v. Lee County Board of Public Instruction*, 467 F.2d 447, 450 n. 6 (5th Cir.1972); C. Wright et al., *supra* note 11, § 4248 at 179.

Such a reference does not demote (or promote) a state supreme court to a court at the same level as the referring court. Similarly, the reference by a district court of its bankruptcy appeals does not demote a BAP to a court at the district court level.

### 5. Who is Bound by a BAP Decision

The remaining consideration is who is bound by a decision by the BAP, as a unit of the circuit court. Defendants argue that it would be anomalous for this Court to be bound by decisions of the BAP while the district court is not bound. The outcome may then turn on whether the case is pending in the bankruptcy court, which would be bound by BAP precedent, or in the district court (pursuant to a withdrawal of reference, presumably), where the BAP decision would not be binding.

The bankruptcy courts throughout the circuit certainly must be bound by a BAP decision. They are "lower" courts, within the meaning of the stare decisis rule. The BAP is the designated circuit-level panel for bankruptcy appeals that go to the circuit court (as opposed to the district court) for resolution of the first level appeal. Thus the bankruptcy courts of the circuit owe obedience to the BAP, and are bound by its decisions.

Whether a district court is bound by a BAP decision is a more difficult question. The Ninth Circuit stated in dictum in *Bank of Maui, supra:*

As article III courts, the district courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction.

This result is not at all apparent. There are at least two considerations that could lead to a conclusion that district courts are bound by BAP decisions. First, there are many situations where an article III court is bound by decisions of courts that do not enjoy article III status: thus it would not be an anomaly for the BAP to bind an article III court. Second, the BAP is a unit of an article III court, the circuit court, and its rulings are the rulings of an article III court: thus a rule that district courts are bound by BAP rulings would not result in an article III court being bound by a decision of a non-article III court.

The prospect, that a bankruptcy court may be bound by a BAP decision while a district court may not be, is more a theoretical than a practical problem. In practice district courts tend to follow BAP decisions, because of their persuasive value if not their binding force. Furthermore, if the facts of a particular case call for a different solution, every trial judge knows how to avoid the force of a binding precedent. District judges are as adept as bankruptcy judges in tailoring the law to individual cases: this is largely what the job of judging is about. Finally, district courts may be as bound as bankruptcy courts by BAP decisions. For these reasons, the Court does not find problematic the theoretical possibility that the district court may not be bound by the same precedent that binds the bankruptcy court in the same district.[12]

---

11. This procedure was warmly endorsed in appropriate circumstances by the United States Supreme Court in *Lehman Brothers v. Schein*, 416 U.S. 386, 389–91, 94 S.Ct. 1741, 1743–44, 40 L.Ed.2d 215 (1974). *See generally* 17A C. Wright et al., *Federal Practice and Procedure* § 4248 (1988 & Supp.1991).

12. This outcome is certainly less problematic than the result apparently envisaged by the BAP

in *Windmill Farms, supra,* 70 B.R. at 618. It appears that the BAP in *Windmill Farms* contemplated that the bankruptcy courts in the district where the appeal arose would be bound to follow the contrary district court opinion (which the BAP chose not to follow), but that the parties could avoid the district court precedent by taking an appeal to the BAP (if no party exercised the right to opt out of the BAP's consideration of the appeal). The bankruptcy

## IV. CONCLUSION

For the foregoing reasons, the Court finds that it is compelled by BAP precedent to decide that the trustee was not appointed until the debtor appeared at the continued meeting of creditors on August 11, 1991. Therefore, the statute of limitations under § 546(a)(1) did not begin to run until August 11, 1989. As a result, this adversary proceeding, which was filed on August 8, 1991, was filed within the two year statute of limitations and is timely.

The Court sets a further status conference in this adversary proceeding on January 26, 1993 at 10:00 a.m., pursuant to Local Rule 121(1).

courts in *other* districts would presumably also be bound by the BAP decision. This anomalous result was avoided when the Ninth Circuit reversed the BAP and adopted the district court's interpretation of the applicable law.