**In re MUSKIN, INC., Debtor.**

**MUSKIN, INC., Plaintiff,**

v.

**INDUSTRIAL STEEL CO., INC., Defendant.**

**Bankruptcy No. 1–90–01332.**
**Adv. No. 92–1149.**

United States Bankruptcy Court,
N.D. California.

March 8, 1993.

J. Craig Gilliland, Murphy, Weir & Butler, San Francisco, CA, for debtors.

Charles P. Maher, Rosenblum, Paris & Isaacs, San Francisco, CA, for Industrial Steel Co.

## MEMORANDUM OF DECISION

ALAN JAROSLOVSKY, Bankruptcy Judge.

Prior to its Chapter 11 filing and for a short time thereafter, debtor Muskin, Inc., was a manufacturer of summer lawn furniture. Its assets have now been sold, and a liquidating plan has been confirmed.

Soon after it filed its Chapter 11 petition, Muskin entered into an agreement with Security Pacific Business Credit, Inc., for the use of cash collateral. The agreement called for Security Pacific to have a security interest in Muskin's assets, including proceeds of avoidance actions, to secure both postpetition and prepetition indebtedness. I heartily regret having approved this agreement, even though it had the support of an active creditors' committee represented by able counsel and no objections were raised at the time. Nonetheless, I did approve it.

Muskin's confirmed plan calls for the prosecution of avoidance actions. Muskin has accordingly commenced numerous actions to recover preferences. All of the proceeds from these recoveries will go straight to Security Pacific. Now before the court are several motions brought by defendants to dismiss the preference actions on the ground that since the actions will not benefit the estate they should be dismissed on equitable grounds.

█ I am in complete agreement with defendants' position. I believe that the purpose of a preference action is to achieve equitable distribution of assets, and not to benefit a secured creditor on account of a prepetition debt. I also believe that I have the power, pursuant to section 105(a) of the Bankruptcy Code, to dismiss a preference action which does not benefit the estate. However, in *Enserv Co., Inc. v. Manpower, Inc./California Peninsula*, 64 B.R. 519 (9th Cir.BAP 1986), the Bankruptcy Appellate Panel ruled otherwise and held that there are no equitable grounds for dismissing a preference action. The case is on point, and not meaningfully distinguishable. Thus, the issue now before me is not whether I can dismiss the case pursuant to section 105(a) but rather, under the doctrine of *stare decisis*, I must follow the Appellate Panel decision.

I first note that there is no law codifying the doctrine of *stare decisis*, nor is there any penalty for a judge who either ignores the doctrine entirely or avoids its effect by disingenuous distinguishing. An appellate

court will affirm or reverse based on the merits of the case, not whether the trial court strictly adhered to the doctrine. Judges follow the decisions · of higher courts because they know that the higher courts will reverse if they don't, and the value of the trial court's decisions (and hence his or her effectiveness as a judge) will be diminished if he or she is always reversed.

I also note that the case law as to the binding nature of Appellate Panel decision is wildly inconsistent. The Appellate Panel has of course stated that its decisions are binding on all bankruptcy judges in the circuit. *Philadelphia Life Ins. Co. v. Proudfoot*, 144 B.R. 876 (9th Cir.BAP 1992). The Court of Appeals has expressed uncertainty as to this proposition. *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir.1990) (concurring opinion). Some bankruptcy judges have held that all Appellate Panel decisions are binding on them (*In re Globe Illumination Co.*, 149 B.R. 614 (Bankr.C.D.Cal.)), while others have held that the decision is only binding if it arose in the same district. *In re Crook*, 62 B.R. 937 (Bkrtcy.D.Or.1986). Many bankruptcy judges refuse to consider any Appellate Panel decision binding on them. See March and Obregon, "Are BAP Decisions Binding on Any Court?" 18 Cal. Bankr.J. 189 (1990).

There is a simple reason for the disagreement over the binding nature of Appellate Panel decisions; bankruptcy appeals may go either to the Appellate Panel or the district court. Thus, the Appellate Panel cannot, in many cases, enforce its views as to the binding effect of its own decisions. Since bankruptcy judges do not know at the time they make a decision which court will hear it, and since few district courts will consider themselves bound by an Appellate Panel decision, it is no surprise that many bankruptcy judges feel free to disregard Appellate Panel decisions.

█ It is entirely legitimate for a bankruptcy court to feel unbound by both a published district court opinion from the same district and an Appellate Panel decision where the two conflict. In such cases, the bankruptcy court has no way of knowing which court will hear the appeal and must therefore decide the issue on the merits rather than *stare decisis.* Moreover, *the litigants know* that there is a conflict, which will have to be resolved by the Court of Appeals, so that the parties are not deprived of the element of predictability when the bankruptcy judge decides the issue on the merits.

However, it is in my opinion wrong, and in some sense shameful, for a bankruptcy judge to feel free to disregard an Appellate Panel decision in the absence of a conflicting ruling by the district court. When a bankruptcy judge disregards an Appellate Panel decision on his or her own, merely because he or she disagrees with it, that bankruptcy judge is letting his or her ego interfere with the system itself.

All trial judges, to be effective, must have strong egos. Without a strong ego, it is almost impossible to make the difficult decisions which must be made ten times a day by bankruptcy judges. A judge with no confidence in his or her ability to distill the facts and correctly apply the law will constantly vacillate and avoid hard decisions, to the great frustration of the litigants and detriment of the court system, as matters become logjammed at the trial level. However, every judge's ego must be tempered with the knowledge that he or she was not appointed to impress his or her own ideas of what is right on the world, but rather to make the legal system work efficiently and justly.

When a judge refuses to follow an Appellate Panel decision, he or she is acting detrimentally to the bankruptcy system for two reasons. First, he or she is wasting a valuable resource. Appellate Panel judges are ordinary bankruptcy judges who, in addition to their regular duties, have volunteered to grapple with complex issues and reach reasoned decisions which not only resolve the dispute of the litigants but provide guidance for all litigants in the circuit. Ego aside, there is no good reason why a bankruptcy judge should want to spend hours struggling with a complicated and thorny issue when three other bankruptcy

judges have already done the same thing, reached a conclusion, and published a decision for the benefit of all.

Second, and more importantly, a bankruptcy judge who feels free to disregard Appellate Panel decisions deprives every attorney in his or her territory of the ability to predict the outcome of a bankruptcy dispute, at least at the trial court level. It is the attorneys, and not the judges, which make any legal system work by counseling their clients and crafting compromises so that only a small portion of potential disputes ever actually come before the judge for adjudication. Published court decisions, whether favorable or unfavorable to a particular position, are the tools a competent lawyer uses in advising his or her clients. The bankruptcy judge who refuses to feel bound by Appellate Panel decisions takes this tool away from the attorneys and thereby harms the system.

■ I frequently disagree with Appellate Panel decisions, and have not been afraid to say so. I disagree quite strongly with the Appellate Panel decision in *Enserv.* However, for the reasons I have stated above I will not disregard it. I will not give my personal opinion on a legal issue greater weight than an Appellate Panel decision because to do so would waste the efforts of the Appellate Panel judges and make the outcome of cases in my court more unpredictable. Accordingly, I issue this decision (and depart from the normal third person form of rendering it) to make it clear that in cases before me Ninth Circuit Appellate Panel decisions are binding, if only because I say they are.

Defendant's motion to dismiss will accordingly be denied. Counsel for Muskin shall submit an appropriate form of order.